## GUST JOHNSON v. FIRST STATE BANK OF ROLLINGSTONE. JEROME SPELTZ, INTERVENER AND APPELLANT.[1]

January 2, 1920.

Nos. 21,398, 21,399.

**Payment of check — drawer cannot stop payment of drafts issued for check.**
Where a check is presented for payment to the drawee, having funds of the drawer to meet it, and the payee, for his own convenience, receives part in cash and part in drafts or cashier's checks of the drawee, the transaction constitutes in law a payment of the check so far as the drawer and drawee are concerned, so that the drawee cannot set up as defense, when sued on the drafts, that the drawer of the check for good cause stopped payment thereon after the drafts were issued and delivered to the payee of the check, nor can the drawer of the check intervene and assert any right in the drafts or claim any relief against the drawee.

Action in the district court for Winona county to recover $4,000. Jerome Speltz intervened and plaintiff demurred to his amended intervening complaint on the ground that it appeared upon the face thereof that it did not state facts sufficient to constitute a ground for intervention. Plaintiff demurred to the answer of defendant bank on the ground that it did not state facts sufficient to constitute a defense. The demurrers were sustained, Callaghan, J. From the order sustaining the demurrer to its answer, the First State Bank of Rollingstone appealed. From the order sustaining the demurrer to his amended intervening complaint, Jerome Speltz appealed. Affirmed on both appeals.

[1] Reported in 175 N. W. 612.

*Henry M. Lamberton* and *Brown, Abbott & Somsen,* for appellants.
*Otto A. Poirier* and *Tawney, Smith & Tawney,* for respondent.

HOLT, J.

This action was brought to recover $4,000, the amount of two drafts or cashier's checks drawn by defendant on the Merchants Bank of Winona in favor of plaintiff, and upon which defendant had afterwards stopped payment.

Defendant answered, alleging that plaintiff had entered into an agreement to sell Jerome Speltz certain shares of stock in a land company at $61 per share and $224 besides; that Speltz gave to plaintiff his check for $4,250 on defendant in payment; that through mistake Speltz believed plaintiff owned and was selling him 66 shares of stock and computed the amount due him on that basis; that in fact plaintiff owned but 39 shares; that plaintiff knew of Speltz's mistake and knew that there was due him but $2,603 and that he took the check with intent to cheat and defraud Speltz; that plaintiff presented Speltz's check to defendant for payment and received $250 in cash and the drafts or cashier's checks above mentioned; that thereafter, but before the drafts were presented for payment at the Winona bank, Speltz notified defendant to stop payment on the check he gave plaintiff, and thereupon defendant stopped payment on the drafts or cashier's checks it had issued to plaintiff. It is conceded that Speltz had ample funds on deposit with defendant to meet his check when it was there presented by plaintiff, and that defendant had ample funds in the Winona bank to meet its drafts. Defendant demurred to this answer as insufficient to constitute a defense, and the court sustained the demurrer. Defendant appeals.

Speltz, alleging the same state of facts, intervened and asked that his check be canceled and returned to him and that he have judgment against defendant for $4,000. Plaintiff demurred to the pleading, on the ground that it does not state a cause of action in intervention. This demurrer was also sustained, and intervener appeals.

Defendant is a state bank in which intervener had a checking account at the time of the transaction stated in the pleadings. When plaintiff accepted intervener's check, the law did not regard the transaction as payment absolute for the shares of stock in the absence of an express or

implied agreement that it should be so considered. First Nat. Bank v. McConnell, 103 Minn. 340, 114 N. W. 1129, 14 L.R.A.(N.S.) 616, 123 Am. St. 336, 14 Ann. Cas. 396. The drawer of such an instrument may revoke the authority of the drawee to pay, accept or certify it at any time before it is paid, accepted or certified. Appellants contend that the same holds true in respect to the drafts issued by defendant. It is also claimed that, since the enactment of the Uniform Negotiable Instruments Act, the giving of a check or draft cannot be regarded as an assignment, equitable or otherwise, of any part of the funds of the drawer in the hands of the drawee, therefore the drawer has the right to revoke the authority to pay at any time before there has been a written acceptance, or certificate or actual payment of the check or draft. In this case the Speltz check when presented was neither certified nor accepted in conformity with the act mentioned. Was it paid?

When plaintiff presented the check at the banking house of defendant, the drawer, Speltz, had money on deposit to fully meet it. It was presented for payment. Plaintiff received $250, and, for his own convenience, requested the two drafts or cashier's checks for the balance. No doubt defendant charged Speltz's account with the whole amount. Clearly both plaintiff and defendant considered the transaction as a payment of Speltz's check, for the former parted with the check and the latter with the cash and the drafts which it knew to be good. When this was done no contract obligation remained in respect to the check, either as between plaintiff and Speltz or as between defendant and Speltz. The check had served its purpose and could thereafter be used only as evidence of a past transaction. Had defendant become insolvent before the drafts were paid, or had plaintiff for any other reason failed to get the money therein called for, he could have had no recourse against Speltz on the check nor could he have sued him for the debt or claim the check was given to settle or pay. "When a debtor gives his creditor an order on his bank to pay an indebtedness, having money at the bank to pay it on presentation, and the creditor waives the right to demand cash and accepts bills of exchange from the bank in payment, the debt is satisfied, though the exchange proves worthless." Loth v. Mothner, 53 Ark. 116, 13 S. W. 594.

Whether defendant paid the check in cash or with its own drafts or cashier's checks was no concern of Speltz. That was a matter wholly be-

tween plaintiff and defendant. Plaintiff requested the drafts instead of the cash, and cannot well be heard to say that they were not accepted in payment of the check he surrendered. And when plaintiff is content to rest on the obligations created by the drafts issued by defendant in the usual course of business, it ought not to lie in the mouth of the latter to say that the check was not paid by the transaction. Plaintiff owed defendant nothing when he presented the check, and the drafts were not given as provisional payment of any debt or obligation then existing between defendant and plaintiff. They were given and taken instead of money. Bank drafts or bank cashier's checks pass current as money in every day business transactions. When large sums are involved, business men prefer to receive payment in such paper rather than in the coin of the realm. In First Nat. Bank v. Maxfield, 83 Me. 576, 22 Atl. 479, the court uses this language in respect to a draft that was surrendered upon the receipt of a check from the acceptor: "The draft in question, in the eye of the law, was paid at maturity, and became dead to the commercial world." See also Equitable Nat. Bank v. Griffen & Skelley Co. 113 Cal. 692, 45 Pac. 985, where a bill of exchange drawn on defendant was presented for payment and defendant on the same day gave its check for the amount to plaintiff, and directed that the bill of exchange be returned to it by mail, because the clerk who had the bill in his charge was temporarily absent from the office of plaintiff's agent when the check was there delivered. The bill was so returned marked paid. It was held that the transaction constituted a payment of the bill of exchange, and defendant could not stop payment of the check. Briggs v. Central Nat. Bank, 89 N. Y. 182, 42 Am. Rep. 285, also bears out our conclusions that defendant here cannot set up the defense attempted.

Appellants rely on Hunt v. Security State Bank, 91 Ore. 362, 179 Pac. 248. There the drawer of the check notified the drawee not to pay after the latter had received the check, properly indorsed, by mail from a bank at a distant city with instructions to remit the amount of the check, and other checks inclosed, "in Portland exchange." When so notified, the drawee had already marked the check paid and had placed it on a spindle with the intention to, later in the day, charge it against the drawer's account and remit the "exchange." The drawee did not remit until after payment was stopped. The court said: "When Hunt (the drawer) or-

dered the defendant not to pay the check the bank had done nothing more than to satisfy itself that the check was genuine, and that there was sufficient funds to pay it, and to stamp it 'Paid,' and to place it upon the spindle. All this was merely preparing to pay; it was simply a step towards payment; it was not payment. No entry was made on the books. The drawer was not charged; the holder was not credited. It may be assumed that the bank intended to make appropriate entries on its books and to remit; but we are confronted with a situation where the bank had not yet executed its intention. An intention to pay is not payment. What the bank did was done in contemplation of payment, but payment was not completed." It is quite clear that the language used in that decision strongly suggests that here, where the payee presented and surrendered the check to the drawee upon receiving part in cash and the balance, at his own request, in these drafts, there was in law a payment of the check before the drawee undertook to stop payment. We think the answer shows no defense.

Reaching that conclusion in respect to defendant's answer, it follows that the intervener's complaint states no cause for intervention. Speltz did not attempt to stop payment of the check until after defendant had fulfilled all the duties it owed him with reference thereto, namely, to honor it when presented for payment. Speltz could have no claim for the $250 defendant paid plaintiff, nor could he claim the drafts, or the funds on which the drafts were drawn. It is not a case like Hoidale v. Cooley, 143 Minn. 430, 174 N. W. 413, where the intervener claimed the notes in suit as its property because its agent had wrongfully appropriated the same. Without intimating that Speltz could successfully urge as a ground of intervention in this action that he would otherwise be unable to obtain redress from plaintiff, we may note that there is no allegation that plaintiff is insolvent or that he cannot be made to respond in damages for any wrong committed in the stock transaction.

The orders are affirmed.