# ERVIN BOHLIG v. FIRST NATIONAL BANK IN WADENA AND ANOTHER.[1]

April 13, 1951.

No. 35,260.

[1]Reported in 48 N. W. (2d) 445.

*Hugh G. Parker, Clifford G. Nelson,* and *O'Brien, Horn, Stringer, Seymour & O'Connor,* for appellant.

*Gordon Rosenmeier,* for respondent.

*Fowler, Youngquist, Furber, Taney & Johnson* and *Dorsey, Colman, Barker, Scott & Barber,* counsel for Minnesota Bankers Association, and *Sigurd Ueland,* counsel for Federal Reserve Bank of Minneapolis, filed a brief as *amici curiae* in support of the petition for rehearing.

LORING, CHIEF JUSTICE.

This is an action by the drawer of a check to recover damages resulting from the drawee bank's failure to comply with stop orders given by the drawer with reference to a $5,000 check.[2] The case was tried without a jury, and the court ordered judgment for plaintiff. Defendant moved for amended findings of fact and conclusions of law or for a new trial, and the motion was denied. Defendant has appealed from the order denying its motion for a new trial.

December 4, 1947, plaintiff drew a check for $5,000 upon his checking account in defendant bank. This check was made payable to the order of the "Farmers Co-Op. Cry. Co. Motely" was delivered to it. The payee creamery company endorsed the check on the same day and deposited it with the Staples State Bank, Staples, Minnesota. The Staples bank forwarded the check through its correspondent, the American National Bank of St. Paul, to the Federal Reserve Bank in Minneapolis. The Federal Reserve Bank listed plaintiff's check and other checks in a cash letter, totaling $34,623.-61, and mailed them and the cash letter to defendant so that they were received by defendant the morning of December 9, 1947.

Before noon of the same day, defendant made up, signed, and placed in an unsealed envelope, addressed to the Federal Reserve Bank in Minneapolis, a remittance draft upon defendant's account at the Northwestern National Bank, Minneapolis, for the sum of

---

[2] This action was brought against the First National Bank in Wadena and the Staples State Bank, but before the jury was selected a stipulation of dismissal was filed as to the latter bank.

$34,531.31, that being the total of the cash letter, including plaintiff's check, less an item of $92.30, which was returned to another payee because of a questioned endorsement.

Between 1:15 and 4:30 p.m. of December 9, 1947, plaintiff's check was posted to his account and charged against it in the ledger. Following that, the check was perforated so that when the reverse side was held toward a bright light it read:

"PAID
12-9-47 [date of payment]
75223 [defendant's transit number]"

The exact times at which the letter containing defendant's remittance draft to the Federal Reserve Bank was sealed and mailed are disputed. Both parties, however, agree, and the court found, that the check was mailed by 5 p.m. Defendant claims that the letter was sealed about 3:30 p.m., but the court found that it was sealed about 5 p.m. For purposes of this decision, we may assume that defendant's version of this matter is correct.

The court found that at about 4:30 p.m. on December 9 plaintiff telephoned defendant, which was then closed for the day, and talked to the assistant cashier, Harold Peterson. He told Peterson that he wanted to stop payment on the $5,000 check. Defendant claims that this telephone conversation took place some time after 5 p.m., and hence after the remittance draft had been mailed. Peterson told plaintiff to see the cashier, H. E. Parker, who had left the bank to go to the barbershop. The court found that plaintiff contacted Parker about 6 p.m. and asked him to stop payment on the check. Parker told plaintiff that it was too late. Defendant claims that this conversation with Parker took place between 6:15 and 6:30. Here, again, we shall assume that defendant's version of the facts is correct.

December 9, mail addressed to Minneapolis and posted at Wadena about 5 p.m. left Wadena by train, either at 6:11 p.m. December 9, or at 2:28 a.m. December 10, and arrived in Minneapolis either at 9:52 p.m. December 9, or at 7:10 a.m. December 10. Both mail

trains stopped at Little Falls, St. Cloud, and Elk River prior to arriving at Minneapolis.

It is conceded by the parties and found by the court that postal regulations[3] gave defendant an absolute right to withdraw its remittance draft from the mails at any time before actual delivery to the addressee.

■ Since the drawer of a check is entitled to have a stop order honored if he gives such order to the drawee before the check is accepted, certified, or paid,[4] the critical question is whether any of those acts had taken place prior to the time plaintiff gave the stop order. Under the provisions of M. S. A. 335.51, acceptance must be in writing and signed by the drawee. Certification, being equivalent to acceptance,[5] must be executed with like formality. We have concluded that defendant's action in perforating the check with the word "PAID" and with the bank's transit number, "75223," was not sufficient to satisfy the statutory requirement. Numerous cases have held that stamping a check "Paid" does not constitute an acceptance,[6] and we think that the transit number adds nothing. The transit number system was developed by the American Bankers Association for the sole purpose of speeding up collection work and making description of checks easier.[7] The transit number is a numerical description of a particular bank—not a signature.

■ Whether plaintiff's check was paid prior to the stop order is

[3]Postal Laws and Regulations U. S. Postoffice Dept. §§ 729, 730, 2094.

[4]Johnson v. First State Bank, 144 Minn. 363, 175 N. W. 612, 9 A. L. R. 960.

[5]M. S. A. 335.741; Standard Oil Co. v. Veigel, 174 Minn. 500, 219 N. W. 863; Gilbert v. Pioneer Nat. Bank, 206 Minn. 213, 288 N. W. 153; 1 Dunnell, Dig. & Supp. § 987a.

[6]Johnson v. First State Bank, 144 Minn. 363, 175 N. W. 612, 9 A. L. R. 960; Hanna v. McCrory, 19 N. M. 183, 141 P. 996; State Bank of Chicago v. Mid-City Trust & Sav. Bank, 295 Ill. 599, 129 N. E. 498, 12 A. L. R. 989; Federal Land Bank v. Collins, 156 Miss. 893, 127 So. 570, 69 A. L. R. 1068; Dakota Radio Apparatus Co. v. First Nat. Bank, 60 S. D. 251, 244 N. W. 351; Hunt v. Security State Bank, 91 Ore. 362, 179 P. 248; contra, First Nat. Bank v. Wisconsin Nat. Bank, 210 Wis. 533, 246 N. W. 593.

[7]62 Harv. L. Rev. 906, 913.

the most seriously disputed question before us. With respect to this matter, counsel for both parties have made their contentions quite clear. Plaintiff contends that a stop order must be honored any time prior to the moment when the payee or his agent has either received payment in cash or has made an unconditional acceptance of something in lieu of cash. Defendant concedes that payment, in the above sense, was not made prior to the time the stop order was given, but argues that a check should be deemed paid, so as to preclude the drawer from stopping payment, when the check has been stamped "Paid" and charged against the drawer's account. Defendant argues that in any event a check should be deemed paid if the stamping and bookkeeping entries are followed by the mailing of a remittance draft to the collecting bank, in conditional payment of the check. The theory of defendant's contention is that payment takes place when the drawee bank has become liable to the payee. The difficulty with defendant's contention is that it assumes as a premise that which it seeks to prove. In brief, defendant argues that the drawee had become liable to the payee because the check had been paid and that the check had been paid because the drawee had become liable to the payee.

Defendant's contention that it became liable to the payee because it had paid the check is slightly novel in light of the usual rule that payment by the drawee discharges its liability on the particular check rather than creating it.[8] Defendant seeks to avoid this seeming absurdity by arguing that the word "payment" has two different meanings with reference to checks in the process of collection. Defendant concedes that the payee has received no actual payment, but contends that it has made payment to the payee in the sense that it is legally obligated to make actual payment to him.

We find no merit in this fine distinction, and, so far as cases de-

[8]Johnson v. First State Bank, 144 Minn. 363, 175 N. W. 612, 9 A. L. R. 960; Tobiason v. First State Bank, 173 Minn. 533, 217 N. W. 934; Yarborough v. Peoples Nat. Bank, 162 S. C. 332, 160 S. E. 844; Lipshitz v. Lindsay Nat. Bank (Tex. Civ. App.) 33 S. W. (2d) 874; Federal Land Bank v. Collins, 156 Miss. 893, 127 So. 570, 69 A. L. R. 1068; see, also, 38 Harv. L. Rev. 857, 873.

cided in other states have purported to make such a distinction, we decline to follow them. We think that, where there has been no acceptance or certification, actual payment, either in cash or by a substitute accepted unconditionally by the payee, is the only other event which liberates the drawee bank from its obligation to honor a stop order given by the drawer.

In Johnson v. First State Bank, 144 Minn. 363, 175 N. W. 612, 9 A. L. R. 960, a check was presented to the drawee for payment. Although the drawee bank had funds of the drawer to meet the check, the payee, for his own convenience, accepted payment partly in cash and partly in drafts or cashier's checks of the drawee bank. Thereafter, the drawer stopped payment on the check and the drawee bank stopped payment on its drafts. When the payee sued the drawee to enforce payment of the drafts, the court held without discussion that the check had been neither certified nor accepted, and the sole issue presented was whether the check had been paid prior to the issuance of the stop order. In holding that the check had been paid before the stop order was given, the court relied upon the fact that the payee had received and accepted the bank drafts in lieu of cash prior to the time the stop order was given.

In Tobiason v. First State Bank, 173 Minn. 533, 217 N. W. 934, plaintiff was indebted to the First State Bank of Ashby on two promissory notes. He gave the bank a check, drawn on another bank for the amount of the two notes. Defendant bank stamped the promissory notes "paid" and forwarded plaintiff's check to the drawee bank for payment. The drawee bank stamped plaintiff's check "paid," charged plaintiff's account, and remitted a draft to defendant bank in conditional payment of several checks, one of which was the one drawn by plaintiff. Defendant bank accepted the drawee bank's remittance draft in lieu of cash. The drawee bank became insolvent before the remittance draft was collected. There, the court held that, since defendant bank had accepted the drawee bank's draft in lieu of cash, plaintiff's check had been paid.

A slightly different situation was presented in W. A. White

Brokerage Co. v. Cooperman, 207 Minn. 239, 290 N. W. 790. The syllabus in that case states the facts as follows:

"A issued and delivered to B a check drawn on a bank *at which both had accounts*. B deposited the check to his account, and the bank credited the amount thereof in his passbook. About an hour later and before the bank had charged the amount of the check to the account of A, * * * it received from A a notice to stop payment on the check. It attempted to do so by charging off the amount of the check on the account of B." (Italics supplied.)

On these facts, the court held that the check was "paid" when the amount of the check had been entered in the payee's passbook. The court, in so holding, stated that it was following the settled common-law rule. The court held that Mason St. 1927, § 7233-1 (now M. S. A. 335.75), does not apply in situations where a check is deposited in the drawee bank, and hence that its provisions do not make the passbook entry conditional payment only. The net effect of the court's holding was that the deposit credit was given by the drawee and accepted by the payee in lieu of cash. In such circumstances, it was proper to hold that the passbook entry constituted actual payment. Where a check is deposited in the drawee bank, it would be an idle ceremony for the payee to demand cash from the drawee in payment of the check and then to return the cash to the drawee for deposit. This court has so stated in at least two cases. Hare v. Bailey, 73 Minn. 409, 76 N. W. 213; Board of Education v. Robinson, 81 Minn. 305, 84 N. W. 105. Where the depository bank is also the drawee bank, there is no physical transfer of cash to fix the moment of payment. The act of the drawee in making the passbook entry and the act of the payee in surrendering the check in return for the deposit credit were properly regarded as marking the moment when payment was made. In such circumstances, the deposit credit is offered and accepted in lieu of cash and by the common-law rule should be regarded as final payment, unless the parties have agreed to the contrary.

In Midland Loan Finance Co. v. Kisor, 206 Minn. 134, 287 N. W. 869, a check was presented to the drawee bank for payment. The

bank stamped the check "Paid," charged the check against the drawer's account, and issued its draft to the collecting bank. Some two hours later the drawer's account was garnisheed. In those circumstances, the court sustained the trial court's finding that at the time of the service of the garnishment summons the drawee bank had no money, property, or effects in its hands or under its control belonging to the drawer. Although it appears that the court was strongly impressed with its duty to protect the garnishee bank so that no harm could come to it beyond its actual liability, that case is distinguishable from the case at bar, not only because it involved considerations peculiar to a garnishment proceeding, but also because it did not appear that the garnishing creditor had undertaken to allege and prove facts showing that the drawee bank still had control of the remittance draft at the time the stop order was received.

In Holdingford Milling Co. v. Hillman F. Co-op. Creamery, 181 Minn. 212, 231 N. W. 928, plaintiff sold certain goods to defendant, and defendant mailed its check to plaintiff for $1,036.50, drawn on the Farmers State Bank of Hillman. Plaintiff deposited the check in the Stearns County State Bank of Albany for collection. The depository bank forwarded the check to its correspondent, the First National Bank of Minneapolis, for collection, and it, in turn, forwarded the check to the drawee bank for payment. The drawee bank stamped the check "paid" and charged defendant's account for the amount of the check. It then forwarded its own draft to the Minneapolis bank as a remittance for defendant's check and other checks. However, before the Hillman bank's remittance draft reached the Minneapolis bank, the Hillman bank was closed for liquidation, and the draft was not paid. On these facts the court held that defendant's check had not been paid by the drawee, and hence that plaintiff had not been paid for his goods. If defendant's contention here had been followed in the Holdingford case, the court would have been compelled to say that the act of the drawee in stamping the check "paid," charging the drawer's account, and mailing the remittance draft, was a payment by the drawee which

obligated the drawee bank to the payee. In that event, the payee would have been a preferred creditor of the drawee bank, and the drawer would have been discharged according to the generally recognized rule that payment by the drawee discharges the drawer.[9] Since the court did not so hold, we can only conclude that, in this state, there is no kind of quasi payment which obligates the drawee to the payee so as to require or entitle the drawee to ignore a stop order given by the drawer prior to actual payment. In the Holding-ford case, the drawee bank had completed every act which defend-ant in the present case had completed prior to the stop order, and yet it was held that those acts did not constitute payment. It is significant to note that the principal difference between Holding-ford Milling Co. v. Hillman F. Co-op. Creamery, 181 Minn. 212, 231 N. W. 928, and Tobiason v. First State Bank, 173 Minn. 533, 217 N. W. 934, is that in the Tobiason case the payee actually ac-cepted the drawee's remittance draft in lieu of cash so that payment became final prior to the insolvency of the drawee, whereas in the Holdingford case neither the payee nor his agent, the collecting bank, had received or accepted the drawee's remittance draft prior to the time that the drawee became insolvent. We regard the Hold-ingford case as controlling our decision here.

From the foregoing cases, it appears that unless and until it is found that the drawee bank has certified, accepted, or paid a check, it is obligated to honor the drawer's stop order and that payment does not occur until the drawee has either paid the check in cash or has given something in lieu of cash which has been accepted unconditionally by the payee or his agent. Since in the present case defendant's remittance draft admittedly had been neither re-ceived nor accepted by the payee or its agent, the collecting bank, prior to the time the stop order was issued, and since defendant could have prevented the occurrence of any such acceptance by re-trieving its remittance draft from the mails, we should hold that

[9] M. S. A. 335.45(1); see, also, cases cited in footnote 8, *supra,* and W. A. White Brokerage Co. v. Cooperman, 207 Minn. 239, 290 N. W. 790 (by implication).

no payment had been made prior to receipt of the stop order and hence that defendant bank is liable to plaintiff for having neglected its duty to honor the stop order.

Since our decision here is based upon facts which are assumed to be as stated by appellant, conceded to be true, or amply justified by compelling evidence, it is unnecessary to discuss those assignments of error which relate to the trial court's findings.

■ Only two other matters require comment. The deposit contract between defendant and plaintiff provided that requests to stop payment "shall be made by the customer in writing and that the liability of this bank is limited to the exercise of its customary diligence to prevent the payment of said check." Since plaintiff issued the stop order to defendant's assistant cashier and cashier orally, a question is presented as to whether the requirement of a written stop order was waived by defendant. With respect to this question, we regard the rule laid down in Malmquist v. Peterson, 149 Minn. 223, 226, 183 N. W. 138, 140, as controlling. There, the court, in holding that a material condition of a contract had been waived, relied upon the following general rule, which it quoted with approval:

"* * * 'Where by the course of conduct of one party to a contract, entitled to the performance of certain terms or conditions thereof, the other party has been led to believe, as a man of average intelligence, that such performance will not be required, until it has become too late to perform, or until to insist upon performance would work material injustice, the person who has so conducted himself is barred from asserting the right he had.' Bigelow, Estoppel (6th ed.) p. 717."

In the present case, neither defendant's assistant cashier nor its cashier insisted upon a written stop order or suggested that one be given. Its cashier declined to honor the stop order on the sole ground that it was too late. In these circumstances, the Malmquist case is controlling authority for the trial court's determination that defendant had waived its contract right to demand a written stop order.

Since, after receiving a stop order with reference to plaintiff's check, defendant's officers did nothing to prevent the check from being paid, we must sustain the trial court's finding that defendant did not exercise its customary diligence or even ordinary diligence to prevent payment of the check. The check involved here was for $5,000. Since defendant failed to take any action whatsoever with respect to a matter so obviously important to its depositor, there is no support for its contention that it exercised either its accustomed diligence or ordinary diligence.

Affirmed.

### Upon Petition for Reargument.

On June 22, 1951, the following opinion was filed:

Per Curiam.

The petition for reargument is denied for the following reasons: (1) The bank limited its liability by contract to the exercise of customary diligence; (2) the evidence in this case establishes that the bank had the opportunity and the means of stopping payment; (3) the undisputed evidence is that the bank did nothing whatsoever to stop payment. Therefore, it cannot be said that the bank exercised the reasonable degree of diligence which should be customary in matters of this importance. In fact, there was no evidence introduced to show what was customary diligence.

Petition denied.