**Richard R. MENKE, d/b/a Menke Plumbing-Heating & Sheet Metal Work, Appellant,**

v.

**BOARD OF EDUCATION, INDEPENDENT SCHOOL DISTRICT OF WEST BURLINGTON, Iowa, Appellee,**

and

**The State Central Savings Bank, Defendant-Appellant.**

**No. 55776.**

Supreme Court of Iowa.

Oct. 17, 1973.

Napier, Napier & Wright, Fort Madison, for appellant Menke.

Pryor, Riley, Jones & Walsh, Burlington, for appellant The State Central Savings Bank.

Cray, Walter, Cray & Loeschen, Burlington, for appellee.

Heard by MOORE, C. J., and REES, REYNOLDSON, HARRIS and McCORMICK, JJ.

REES, Justice.

This matter comes to us on two separate appeals; one brought by the plaintiff Menke, and the other by defendant, The State Central Savings Bank. Both appeals are directed against the order of the trial court sustaining motion of defendant Board of Education of the Independent School District of West Burlington, Iowa, for judgment on the pleadings.

Plaintiff Richard R. Menke is an individual operating under the trade name and

style of Menke Plumbing-Heating & Sheet Metal Work with his place of business at West Point, Iowa. In response to an invitation to bid on work to be done on an addition to the West Burlington senior high school, plaintiff submitted a bid, and accompanied his bid with a check drawn on defendant Bank in the principal sum of $6300 and payable to the secretary of the Board of Education of the West Burlington Community School District. The check was dated June 30, 1970 and was apparently submitted for certification to an officer or employee of defendant Bank on the same date. The officer or employee of the bank caused to be impressed on the face of the check a stamp in words and figures as follows:

> CERTIFIED
> June 30, 1970
> The State Central Savings Bank
> West Point Office, West Point, Iowa
> _____
> Manager
> $6,300.00

No signature appeared on the line provided therefor.

When the bids were opened by the defendant Board of Education, it was found that plaintiff Menke's bid was the lowest submitted. However, on July 17, 1970 the Board, or its architect, advised plaintiff by letter that it was returning his check to him, and that the Board of Education had adopted a resolution not to allow his bid security as a legitimate certified check since it was not signed by an official of the bank making the certification. The contract was let to another bidder, and plaintiff instituted his suit against the Board of Education and the defendant Bank, claiming he had been damaged by the loss of net profits he would have realized from the performance of the contract in the amount of $45,000.

Plaintiff's petition against both defendants is in four divisions; in divisions I and IV of his petition as amended, he alleged in substance that defendant Board of Education had wrongfully and in breach of contract rejected his low bid. In divisions II and III of his petition as amended, he asserted that defendant State Central Savings Bank had negligently and in breach of contract failed to properly certify the check which he had submitted with his bid to defendant Board of Education.

Following the filing of separate answers, the Board of Education filed its application for adjudication of law points. In its ruling on the same, the trial court held: (1) the check presented by plaintiff with his bid was not certified as provided by law; (2) plaintiff's bid was defective because a proper certified check was not submitted therewith in conformity to the invitation to submit bids, and that therefore the defendant Board had a right to reject the bid; and (3) that plaintiff had stated no cause of action against the Board since he did not allege fraud.

Following the ruling of trial court on the application for adjudication of law points, the defendant Board of Education moved for judgment on the pleadings, asking that the petition as against it be dismissed at plaintiff's costs. The motion of the defendant Board for judgment on the pleadings was sustained and the appeals of both plaintiff and defendant Bank are directed at such ruling.

Defendant Bank did not join in the application of the Board of Education for separate adjudication of law points, nor did it join in the Board's motion for judgment on the pleadings. Neither did it file separate applications or motions.

Defendant Bank assigns the following errors upon which it relies for reversal:

1. Trial court erred in ruling questions involved were of law only and not questions of both law and fact.

2. Trial court erred in ruling the check accompanying Menke's bid was not a certified check as a matter of law.

3. Trial court erred in ruling the Board of Education had the right to consider

Menke's bid and reject the bid because the "certification" was not signed.

4. Trial court erred in ruling an unsuccessful low bidder on a public contract does not have a right to recover damages from the public body, the Board of Education, for its failure to award the contract to the low bidder.

Plaintiff Menke advances the following statements of error on which he relies for reversal:

1. Trial court was correct in its ruling the check was not properly certified by the Bank.

2. If, however, the supreme court reverses the above determination and holds the check was properly certified, then

(a) trial court erred in ruling the bid was defective and, therefore, the Board had the right to reject it; and

(b) trial court erred in ruling Menke did not have a cause of action against the Board.

I. We first consider the appeal of defendant State Central Savings Bank.

■ Defendant Bank contends that questions of check certification and the liability of the Board of Education in refusing a bid accompanied by an allegedly uncertified check, were not properly subject to a motion for separate adjudication of law points under rule 105, Rules of Civil Procedure, and the court's determination thereof was error. The Bank asserts that a factual dispute existed as to its intent to certify Menke's check, and that consequently the question was not purely one of law for adjudication under rule 105.

We are unable to agree that any fact question was involved in the determination as to whether the check was certified, and conclude the court acted properly in determining separate law points under the motion of the Board of Education.

At 10 Am.Jur.2d, Banks, § 590, p. 557, we find:

"When a check is certified, it ceases to possess the character or to perform the functions of an ordinary check; it represents so much money on deposit, payable to the holder on demand. The certification of a check is a *contract* which brings the holder of the check into privity with the drawee bank which has certified it." (Emphasis supplied).

We have heretofore said that under certain circumstances, construction of a written contract is a matter of law for the courts to decide without resort to extrinsic evidence. See General Casualty Co. of Wis. v. Hines, 261 Iowa 738, 156 N.W.2d 118 (1968); Boyer v. Iowa High School Athletic Ass'n, 260 Iowa 1061, 152 N.W.2d 293 (1967); Schlotter v. Leudt, 255 Iowa 640, 123 N.W.2d 434; Huntsman v. Eldon Miller, Inc., 251 Iowa 478, 101 N.W.2d 531. While the authorities cited do not involve a certified check situation, we do recognize that there are instances when the question of intention turns upon the construction of a writing, and is thus a proper question of law for the court. 53 Am.Jur., Trial, section 219, p. 187.

■ A motion for separate adjudication of points of law under rule 105, R.C.P., is for the purpose of determining uncontroverted pleaded issues raising points of law. Norland v. Mason City, 199 N.W.2d 316, 318 (Iowa 1972); Rasmussen v. Nebraska Nat'l. Life Insurance Co., 170 N.W.2d 370, 373 (Iowa 1969). There was no controversy in the pleadings as to the form of the writing said to constitute the certified check, and the court could properly rule on the validity and construction of the check and its certification, including the bank's intention, from the writing itself.

In its brief and argument, defendant Board of Education aptly observes:

"The question * * * becomes simply what are the legal requirements for certification, and does a check marked as

shown in Exhibit 'A' * * * meet these requirements. This question is one of the law of commercial instruments and is not a fact question."

We agree and hold the trial court did not go beyond the intent and contemplation of rule 105 in ruling on the Board's motion for separate adjudication of law points in this case on either the check certification question or the derivative question as to the liability of the Board of Education in refusing to accept the check.

■ II. The principal issue presented by the Bank's appeal is whether a check stamped as was the check in the case here is properly certified as a matter of law. The Bank claims the stamp placed upon the check by it is adequate to constitute a certification. The lower court held, and plaintiff Menke and defendant Board assert in this appeal that the stamped words indicating certification without the signature of a bank official do not as a matter of law suffice to effect proper certification of the check. We are persuaded the trial court was correct in its ruling, and agree with plaintiff and defendant Board.

We are unable to find precedent holding that that there is any specified form essential to the certification of a check. At 10 Am.Jur.2d, Banks, § 589, p. 557, we find:

"The usual practice is to stamp or write on the check the word 'certified', 'good', 'accepted', or an equivalent expression, *with the signature of the certifying officer*." (Emphasis supplied).

Section 554.3411(1), The Code, which is embraced in the Uniform Commercial Code provisions, defines certification of a check to be acceptance. "Acceptance" consists of "the drawee's *signed* engagement to honor the draft as presented. It must be written on the draft, and may consist of his signature alone." (Emphasis added). See section 554.3410(1), The Code. Official U.C.C. Comment on this section echoes the language from 10 Am.Jur.2d, *supra,* regarding the customary practice in certifying checks.

■ From the foregoing provisions of the Uniform Commercial Code, the following inferences are presented: (1) Certification must be in writing, at least as opposed to parol acceptance. We find other jurisdictions have had occasion to deal with similar provisions and have generally upheld the principle in the interests of commercial certainty and reasonable reliance by third parties. Bohlig v. First National Bank in Wadena, 233 Minn. 523, 48 N.W.2d 445, 447; Mansfield v. Goldsmith Bank, 82 Ind.App. 224, 145 N.E. 586, 587. True, we have no parol acceptance issue here, but the underlying rationale against parol certification is relevant. (2) If an acceptance can consist of a signature alone, the logical conclusion would seem to be that a certification consists of no less than a signature and possibly other words indicating acceptance.

Defendant Bank seeks to avoid the above by contending that the stamped words on the Menke check are sufficient to constitute its (the Bank's) signature, and relies upon section 554.3401(2), The Code, which, in pertinent part, provides:

"(2) A signature is made by use of any name, including any trade or assumed name, upon an instrument, or by any word or mark used in lieu of a written signature."

The Official U.C.C. Comment to the foregoing section is:

"(2) A signature may be handwritten, typed, printed or made in any other manner. It need not be subscribed, and may appear in the body of the instrument, as in the case of 'I, John Doe, promise to pay—' without any other signature."

Defendant Bank would have the above settle the question, but we are not so persuaded.

We note the definition of the word "signed" in section 554.1201(39), The Code, includes "any symbol executed or adopted by a party *with present intention*

*to authenticate a writing."* (Emphasis supplied). Authentication must be discernable when viewed in the light of commercial reasonableness. The defendant Bank here affixed a stamp bearing words of certification with a blank line for a bank official's signature to assure the holder or third parties that the check was certified by the bank and that the certification was authentic. Rubber-stamps may be easily copied and secured with facility, and fraudulent certification accomplished by the use thereof would be detrimental to the interests of a bank. We therefore feel it is consistent with customary certification practice, as hereinabove referred to, to conclude that defendant Bank had adopted the stamp, but that a "present intention to authenticate" a check required the script signature of a bank official to indicate certification.

Section 4.1(18), The Code, provides that "signatures, when required by law, must be made by the writing or mark of the person". While this statutory provision might be superseded in application to this question by the broader provisions of section 554.1201(39) of the Uniform Commercial Code, it does provide a policy background to aid in determining the questions presented here.

This court has held in the original notice cases that failure to comply with the stated requirements of rule 50, R.C.P., calling for the signature on an original notice by the plaintiff or his attorney is more than a mere irregularity, and renders the notice void. White v. O'Neill, 164 N.W.2d 79 (Iowa 1969).

We are aware that printed or rubber-stamped facsimile signatures on instruments or documents have been held to be sufficient for purposes of a written signature requirement. See Annot., 7 A.L.R. 672 (concerning sufficiency of a printed or stamped signature or indorsement on a bill or note); Annot., 46 A.L.R. 1498 (supplemental to the annotation in 7 A.L.R., *supra*); Cummings v. Landes, 140 Iowa 80,

117 N.W. 22 (concerning a statute requiring an original notice to be signed by plaintiff or his attorney, and holding its requirements satisfied by attaching either of said names by any of the known modes of impressing a name on paper, namely, by writing, printing, or lithographing if the requisite intention to authenticate is present). Defendant Bank here did not affix any type of signature on the line provided, and we have already discussed its attempt to equate the words of certification with the bank's "signed endorsement".

We hold, therefore, that a check stamped with words of certification and a signature line, but without any written, printed, stamped or facsimile signature thereon, does not provide sufficient evidence of intent to authenticate certification by a bank to a holder in a commercial transaction, and as a matter of law does not comply with the statutory requirements for certification.

III. Plaintiff and defendant Bank both contend that section 297.7, The Code, 1966, was violated by the Board of Education when it rejected Menke's bid and that therefore Menke has a cause of action against the Board for such rejection. Said section provides in pertinent part:

> " * * * [T]he contract shall be let to the lowest responsible bidder but the board may reject any and all bids and advertise for new bids. After any bid is accepted, a written contract shall be entered into, and the contractor shall furnish bonds with sureties for the faithful performance of the contract."

After rejecting Menke's bid, the defendant Board did not readvertise for bids, but immediately accepted the bid of the next lowest bidder.

In 64 Am.Jur.2d, Public Works and Contracts, § 60, p. 914, which touches generally on the subject, we find:

> "Where bids are to be received for the construction or improvement of public

works, it is often required that each bidder provide security with his bid [in the nature of a cash deposit or check or bond] for the execution of the contract if awarded to him.

" * * *

"When a bond is required of bidders, the public authorities may exercise discretion as to its sufficiency, and in general, if a satisfactory bond is not tendered as required, the bid may be rejected."

■ Within the context of statutes directing that contracts be let to the lowest responsible bidder, it has been repeatedly held that the lowest pecuniary bid is but a single factor in the determination as who is the lowest responsible bidder. "Responsibility" may embrace factors other than the low dollar figure, including such considerations as the business judgment of the bidder and the bidder's record for reliability in performance. Only the exercise of sound discretion by a public body will satisfy the statute. See Annot., 86 A.L.R. 131, regarding the effect of bonds on the right to award public contracts to one other than the lowest financial bidder.

In its ruling on the motion for adjudication of law points, the trial court relied on the statements of this court in Interstate Power Co. v. McGregor, 230 Iowa 42, 50, 296 N.W. 770, 774:

"It is clear from the instrument itself that the essential part of the proposal was not signed. The defendants had the right to waive such defect, but they also had a right to insist upon the due execution of the written proposal by a proper signature. This is true, notwithstanding the required check of $2,000, or 5 per cent of the bid accompanied the instrument. The defendants were not required to take a chance of possible litigation because of the defective instrument, and they had a legal right to give no consideration to the bid."

In Interstate Power v. McGregor, the court was not construing a statute requiring the contract to be let to the lowest responsible bidder, but was construing § 6134.10, The Code, 1939, which required governmental officials to enter into such contracts as they deemed to be in the best interest of the municipality. Discretion was the keystone of the statute, as we think it is in § 297.7 despite the different phraseology.

In Weitz v. Independent District of Des Moines, 79 Iowa 423, 44 N.W. 696, this court said:

"The statute confers upon the school directors the power to contract for the building of a schoolhouse with one who is the 'lowest responsible bidder,' and who shall furnish 'bonds with sufficient sureties for the faithful performance of the contract.' If plaintiff was not the lowest bidder, and did not furnish the bonds required, the statute conferred no power upon the directors of the defendant to contract with plaintiff."

It is suggested that the irregularity in plaintiff's check could have been waived by the Board in its award of the contract while still complying with the provisions of § 297.7, The Code. Admittedly, the Board could have waived such defect, but in so doing it might have been faced with the prospect of litigation controverting the effect of the failure of defendant Bank to sign the certification. We feel in the light of our foregoing discussion, that the defendant Board of Education was justified in determining plaintiff was not the lowest responsible bidder, and in letting the contract to that person they felt satisfied those requirements in conformity to its invitation to submit bids. As to the appeal of the defendant Bank, we affirm the trial court.

■ IV. Our affirmance of the trial court in its determination that the check in question was not properly certified, and that the defendant Board was justified in

rejecting Menke's bid and immediately accepting another bid, necessarily leads to the conclusion that plaintiff has no cause of action against the Board. In the absence of fraud or conspiracy, an action by an unsuccessful bidder for public work will fail, Mortland v. Poweshiek County, 156 Iowa 720, 137 N.W. 1009, and the trial court will not substitute its own judgment for a discretionary action of a public body. On the errors assigned, we find plaintiff has no cause of action against the defendant Board for refusing to accept his bid.

V. Our determination that the check in question was not properly certified is dispositive of the plaintiff's appeal in its entirety. We are asked to pass upon the secondary questions presented by plaintiff's appeal only in the event we determine that the trial court was incorrect in finding the check was not properly certified.

We, therefore, affirm the trial court as to both appeals.

Affirmed as to both appeals.