**DICKINSON COMPANY, INC.,**
**Plaintiff-Appellant,**

v.

**CITY OF DES MOINES, IOWA, and Peter Crivaro, as Mayor of the City of Des Moines, Iowa; Elaine Szmoniak, as City Councilperson; L. Clarke Priebe, as City Councilperson; George Nahas, as City Councilperson; Archie Brooks, as City Councilperson; George Flagg, as City Councilperson; and Timothy Urban, as City Councilperson, Defendants-Appellees,**

**and**

**M. Peterson Construction Company, a Corporation, and Iowa Signal and Electric Company, a Corporation, Intervenors-Appellees.**

No. 2–69524.

Court of Appeals of Iowa.

Feb. 21, 1984.

Carlton G. Salmons of Austin & Gaudineer, Des Moines, for plaintiff-appellant.

Nelda Barrow Mickle, City Sol., for defendants-appellees.

Dick Jensen of Dreher, Wilson, Adams, Jensen, Sayre & Gribble, and Larry Seckington of Brick, Seckington, Bowers, Swartz & Gentry, P.C., Des Moines, for intervenors-appellees.

Heard by SNELL, P.J., and SCHLEGEL and HAYDEN, JJ.

SNELL, Presiding Judge.

In 1981, the City of Des Moines solicited bids on the "Fleur Drive Signal System Project." The plaintiff, Dickinson Company, Inc., and the two intervenor companies, M. Peterson Construction Company and Iowa Signal and Electric Company, as joint venturers, were among the construction companies submitting bids. According to rules set by the Iowa Department of Transportation (DOT), any bid made by a contractor was to be accompanied by a bid bond as a proposal guarantee. In the case of a joint venture bid, all contractors were required to sign a bid bond. In the instant case, only one contractor of the intervenors' joint venture, M. Peterson Construction Company, submitted a bid bond with the bid. According to DOT rules, if a bid bond failed to meet the requirements, the bid bond was to be declared invalid and the respective bid proposal was not to be considered. Nevertheless, the intervenors' bid was opened and considered with the other contractors' bids.

The intervenors' bid of $397,210.00 was the lowest bid received. Dickinson's bid of $455,991.50 was second lowest. The city council met and accepted the intervenors' bid subject to approval by the DOT, which was supplying 95 percent of the funding for the project. At the same meeting, the city also received an additional bid bond to cure the defect in intervenors' original bid.

The Iowa Attorney General's office, on behalf of the DOT, informed the city that the intervenors' bid did not conform to the bid proposal requirements; therefore, the contract could not be awarded to the intervenors. The Attorney General's office further informed the city:

> We find your bid document forms acceptable and could concur in the award of the contract to Dickinson Co., Inc., as the lowest responsib[l]e bidder. Documents submitted on behalf of Dickinson Co. are in compliance with the bidding procedure. You should also be aware that were the City of Des Moines to relet the project by rejecting all bids, our participation would be limited to $455,991.56; the amount of the lowest acceptable bid.

The city thus had a choice of accepting Dickinson's next lowest bid or rejecting all bids and opening up the project for bidding again. The city chose to reject all bids and readvertise. In the rebidding, Dickinson's bid was $451,991.50 and intervenors' bid was $394,210. Intervenors' bid was lowest; the contract was awarded to them.

Dickinson filed this action in district court asking for a writ of certiorari to the city council to require them to award the contract to Dickinson. The petition also contained a request for a declaratory judgment awarding the contract to Dickinson and a claim for damages on theories of deprivation of civil rights and tort.

The case was submitted on stipulated facts. The court concluded that it did not have subject matter jurisdiction to proceed in granting certiorari relief on any of Dickinson's claims arising from the city's acceptance of intervenors' bid subject to DOT approval. The court viewed the city's acceptance as full and complete as of July 27,

1981, and thus, any alleged illegality was complete then. Dickinson did not file its petition until September 15, 1981. According to Rule 319, Iowa Rules of Civil Procedure: "No writ of certiorari shall issue or be sustained unless the petition is filed within thirty days from the time the inferior tribunal, board or officer exceeded its jurisdiction or otherwise acted illegally." Iowa R.Civ.P. 319 (1983). Thus, because Dickinson's petition was not filed within thirty days of the city's conditional acceptance of intervenors' bid, the court found the petition untimely as to the city's acceptance of intervenors' bid.

The court evidently found it had jurisdiction to consider Dickinson's claims directed to the city's rejection of all bids and readvertising the project. As to these issues, the court held that, by Iowa case law and by Iowa Code section 384.100, the city was entitled to reject all bids. The court further held that no private cause of action exists in favor of a private bidder, as no absolute right to a public improvement contract exists, and that Dickinson's participation in the rebidding of the contract estopped it from now claiming its invalidity.

Dickinson raises many arguments on appeal: that its application for certiorari was timely; that the trial court had jurisdiction of the case as an ordinary law action; that the judgment was not supported by substantial evidence; that the city's actions were unreasonable, arbitrary and capricious and therefore illegal; that Dickinson had a common law cause of action to assert its right to the contract; that it has a claim for damages because its right to the contract was denied; that it also has a claim for damages for deprivation of due process rights; and that the district court improperly based its decision in part on an equitable doctrine, not applicable in this action at law.

■ Regarding the jurisdictional argument, we find that plaintiff's cause of action did not arise until the city finally chose its course of action. Its initial acceptance of intervenors' low bid was conditioned upon its being legally sufficient. When

advised that it was not, the city then chose to readvertise for bids. That decision on August 17, 1981, commenced the time period for any certiorari action. Plaintiff's petition filed on September 15, 1981, came within the thirty-day period to satisfy the jurisdictional requirements. The supreme court has stated:

> Certiorari is appropriate where an inferior board, exercising judicial functions, acts illegally. Iowa R.Civ.P. 306. An illegality is established if a board has not acted in accordance with the statute. The burden to prove such an illegality rests with the plaintiff.

*Istari Construction, Inc. v. City of Muscatine,* 330 N.W.2d 798, 799 (Iowa 1983).

■ Certiorari is an action at law; therefore, "our review ordinarily is not *de novo* and we do not review fact findings of the lower tribunal further than to ascertain if they are sustained by competent and substantial evidence." *State v. Cullison,* 227 N.W.2d 121, 126 (Iowa 1975). Where there is no factual dispute, we review trial court's conclusions as a matter of law; in reviewing law issues, we are not bound by trial court's ruling. *See id.* An exception to this review occurs when issues of violation of basic constitutional safeguards are raised. Such issues require us to make our own evaluation of the totality of the circumstances under which the ruling on those constitutional rights was made. *See id.*

In the instant case, the district court did not make a conclusion regarding either the illegality of the city's action in opening and considering intervenors' bid or Dickinson's claims of violation of his due process rights. Dickinson assigns these two omissions as error by the district court.

■ Section 384.99 states: "The contract for the public improvement must be awarded to the lowest responsible bidder ...." Dickinson claims that the "must" language of this section required the city to award the contract to it since it was the lowest responsible bidder after intervenors' bid was declared unacceptable. We note

that the discretion exercisable under this section is wide in scope. The lowest pecuniary bid is but a single factor in the determination. The supreme court has stated: "'Responsibility' may embrace factors other than the low dollar figure, including such considerations as the business judgment of the bidder and the bidder's record for reliability in performance." *Menke v. Board of Education,* 211 N.W.2d 601, 607 (Iowa 1973). But if the contract is let, the statutory direction must be followed and cannot be avoided by advertising for bids under terms that violate the statute. *Dunphy v. City Council of Creston,* 256 N.W.2d 913, 919 (Iowa 1977). Thus, because Dickinson was not declared to be an unacceptable bidder, it was entitled to the contract award, if any was to be made. Section 384.100, however, provides in part:

> The governing body may, by resolution, award the contract for the public improvement to the bidder submitting the best bid, determined as provided in section 384.99 [specifying lowest responsible bidder] or it may reject all bids received, fix a new date for receiving bids, and order publication of a new notice to bidders.

██ It is apparent that the legislature meant sections 384.99 and 384.100 to be read together. As such, the statutes give the city the authority to reject all bids and fix a date for soliciting new ones. We find this may be done, as here, even without declaring Dickinson is not the lowest responsible bidder. And, because the initial award to intervenors was invalidated, no binding contract was formed.

In *Istari Construction, Inc. v. City of Muscatine,* the Muscatine city council awarded a contract for public housing subject to approval by HUD. The council refused to award the contract to the lowest bidder, finding that it was not a "responsible bidder" and conditionally awarded the contract to the next lowest bidder. When HUD determined that the council would have to award the contract to the lowest bidder or reject all bids, the council chose the latter course. 330 N.W.2d at 799. On appeal, the contention was made that the city could not choose to reject all bids and had to award the contract to the lowest bidder because it had decided to go ahead with the project. The supreme court, however, disagreed on the ground that although HUD could withhold funding, it could not force the council to accept a particular bidder. Discretion was still retained by the council and was legally exercised when all bids were rejected and new bids solicited. *Id.* at 801. We find this analysis and holding to be controlling of the outcome in the instant case.

██ Furthermore, without deciding whether the city's action in opening and considering intervenors' bid was illegal, we find that those actions did not give Dickinson a cause of action for damages. The city was alerted to the invalidity of the intervenors' bid after it had conditionally awarded the contract to intervenors. By statute, it had the choice of rejecting all bids or of accepting the lowest responsible bid, which would have been Dickinson's bid. Dickinson claims the city would not have reopened the bidding if it had not known through illegal means that intervenors' bid was lower and that a new bid by intervenors would be similarly low. Dickinson argues that the city's decision to reopen the bidding was therefore unreasonable, arbitrary, capricious, illegal and an abuse of discretion.

We do not find evidence to support Dickinson's charges. The city opened the second bidding to everyone. No company was favored. Dickinson joined in the new bidding process and had the opportunity to submit a lower bid. In the first bidding process, Dickinson's bid was $58,781.50 higher than intervenors' bid. In the second bidding, Dickinson lowered its bid by $4,000; intervenors' second bid was $3000 less than their first one. The bids met all technical requirements in the second bidding. The city awarded the bid to the lowest responsible bidder, intervenors.

As the supreme court has stated:
> competitive bidding in the granting of municipal contracts "is employed for the

protection of the public to secure by competition among bidders, the best results at the lowest price, and to forestall fraud, favoritism and corruption in the making of contracts." ... In this regard, municipal authorities possess a discretionary power in the awarding of contracts.... As a general rule, we are reluctant to interfere with a local government's determination of who is the lowest responsible bidder, absent proof that the determination is fraudulent, arbitrary, in bad faith, or an abuse of discretion.

*Istari Construction, Inc.* at 800 (*quoting* C. Rhyne, The Law of Local Government Operations § 27.6, at 942 (1980)).

We find no evidence of fraud, bad faith, arbitrariness, or abuse of discretion. "In the absence of fraud, the unsuccessful bidder, although he be the lowest, has no remedy." *Mortland v. Poweshiek County*, 156 Iowa 720, 723, 137 N.W. 1009, 1111 (1912). By reopening bidding on the contract, the city was trying to correct its previous error in considering intervenors' bid and was giving all potential bidders an equal chance to obtain the contract award. Although the city may have had in mind the considerable discrepancy between the lower bid of intervenors and Dickinson's higher bid when it chose to relet the contract rather than to award it to Dickinson, we cannot say that its interest in saving taxpayers' money was an abuse of discretion.

Furthermore, merely because the city may have been mistaken in considering intervenors' first bid, Dickinson may not receive damages from the city for any such mistake. Because of the large discretion conferred upon the city in awarding a public contract, "[i]n the absence of fraud or conspiracy, an action by an unsuccessful bidder for public work will fail ... and the trial court will not substitute its own judgment for a discretionary action of a public body." *Menke* at 608. As a mere bidder, Dickinson had no legally enforceable contract right, property interest or entitlement which was harmed by the city's mistaken consideration of intervenors' first bid. *See Lametti & Sons Inc. v. City of Davenport*, 432 F.Supp. 713, 715 (S.D.Iowa 1975). Therefore, Dickinson has no legitimate claim for damages.

AFFIRMED.