**William SHOCKLEY, Appellant,**

v.

**UNITED PARCEL SERVICE, INC., Appellee.**

Court of Appeals of Kentucky.

Nov. 4, 1983.

Ordered Published Feb. 17, 1984.

Samuel B. Carl, Louisville, for appellant.

Charles Laurence Woods, III, and David B. Sandler, Baird, Kirven, Westfall & Talbott, Louisville, for appellee.

Before DUNN, HOWARD and HOWERTON, JJ.

HOWARD, Judge.

The appellant appeals from a summary judgment in which the trial court dismissed his action for breach of a carrier's contract of bailment to collect upon a c.o.d. order.

The appellant, William Shockley ("Shockley") operates a mail order wholesale and retail cutlery business out of his home in Jeffersontown, Kentucky. In February, 1982, Shockley received a request from Joe Osborne ("Osborne") for a wholesale list of knives. Shockley sent the list to Osborne at his Virginia address.

On or about February 18, 1982, Osborne called Shockley to place an order for knives. At that time, Osborne informed Shockley that he ran a sporting goods store in which he sold a lot of knives. Osborne placed a substantial order, and Shockley agreed to ship the knives by United Parcel Service (UPS), c.o.d. cash. The next morning Osborne called back to revise his order and asked if Shockley would accept a company check. Although Shockley did not know the name of the company, he agreed to accept cash or company check only. Shockley sent the knives that day by UPS to Joe Osborne, 2238 Timmit-Run-Lane, Falls Church, Virginia 22048. The written instructions to UPS were to accept the amount of $1232.50 by cash or company check upon delivery.

On or about March 1, 1982, before receiving payment for the initial shipment, Shockley sent another order of knives to Osborne at the same address. His instructions to UPS were to collect $927.25, cash or company check.

A few days later, Shockley received from UPS the check it had accepted as c.o.d. payment on the first order of knives. The

check was for the correct amount of $1232.50, but was not imprinted with a company name, having only a hand-written notation at the top which read: "Vienna Knives, P.O. Box 528, Oakton, Virginia, 22124." The check was signed individually by Margaret Osborne, with no indication of her official capacity with the above-mentioned "company." Shockley became concerned after examining the crude appearance of the so-called "company check" and took it immediately to his bank to determine its validity. A bank official telephoned the Bank of Vienna upon which the check had been drawn and was informed that the account from which the check was written had been closed. Upon the advice of the bank official, Shockley deposited the check anyway. It was, of course, returned marked "Account Closed."

Shockley called UPS to attempt to stop the second shipment of knives from being delivered to Osborne. However, it was too late, and the knives were delivered and paid for in the same manner with a check for $927.25. This check also contained a hand-written notation, misspelling the name of the "company" as "Vienn Knives . . . ." The second check was deposited and also returned marked "Account Closed."

Shockley's attorney, Hon. Bill Lawrence of Louisville, contacted Osborne in an attempt to collect the amounts due on the knives. On or about March 6, 1982, Osborne sent a letter to Lawrence informing him that he was mailing to him "a package of knives" and a money order for $100.00 as partial payment on the debt. In the letter, Osborne also offered to pay between $100 and $150 per week until the knives he retained were "payed off." Shockley did not cash the money order and testified by deposition that it was not his policy to accept returned merchandise or to accept such installment payments.

On April 8, 1982, Shockley filed this action against UPS in Jefferson Circuit Court, alleging that UPS breached its bailment contract with him. Shockley demanded the sum of $2159.75, which is the amount he claimed he lost as a result of the alleged breach by UPS. UPS filed a motion for summary judgment on the grounds that it had acted in accordance with Shockley's instructions and that Shockley had ratified the actions of UPS when he deposited the two checks.

On December 27, 1982, the trial court granted the motion for summary judgment and dismissed Shockley's complaint. It is from this judgment that Shockley appeals. We affirm.

Shockley's initial argument on appeal is that UPS breached its bailment contract of delivery through the negligent performance of its duties thereunder, specifically failing to accept only cash or company check for the order contrary to instructions. UPS claims that the checks it accepted were clearly "company checks" and were therefore acceptable under Shockley's instructions.

A court confronted with a motion for summary judgment must address the two-pronged question of whether there exists any genuine issues of material fact and whether the movant is entitled to judgment as a matter of law. In so doing, the court draws all inferences in favor of the non-movant. *Maggard v. McKelvey,* Ky.App., 627 S.W.2d 44 (1981). However, under the particular situation as presented herein, we can find no genuine issue as to the material facts.

KRS 355.3–104 defines a check to be a negotiable instrument if it is a draft drawn on a bank and payable on demand. A company check is such a draft drawn on a company account at a bank. Shockley's c.o.d. instructions authorized UPS to accept "company checks" in payment for the two packages of knives. UPS was not advised upon which company such check could be drawn; in fact, no directions were given to provide a means of identifying a check which could properly be accepted, except for the broad term "company check."

We believe that placing responsibility upon UPS to ascertain the sufficiency of the checks received to satisfy the requirements of the order, in light of the directions

given to UPS, creates an undue burden upon UPS in performing its duties. UPS is not involved in the banking business and is not in a position to credit or discredit negotiable instruments beyond their duty of examining the face of the check to determine whether it comports to instructions given UPS.

The judgment of the trial court is affirmed.

All concur.