SKIPPER MARINE ELECTRONICS, INC., Plaintiff-Appellant, v. UNITED PARCEL SERVICE, INC., Defendant-Appellee.

First District (6th Division)   No. 1—89—0629

Opinion filed February 15, 1991.

232

Shifris & Barry, Ltd., of Northbrook (Kevin G. Barry and Donald S. Shifris, of counsel), for appellant.

Keck, Mahin & Cate, of Chicago (Robert E. Arroyo and Kevin Tottis, of counsel), for appellee.

JUSTICE LaPORTA delivered the opinion of the court:

This is an appeal by plaintiff, Skipper Marine Electronics, Inc., of the entry of summary judgment by the trial court in favor of defendant, United Parcel Service, Inc. (UPS).

Plaintiff raises three issues on appeal: (1) whether a motion for summary judgment must be denied where the verified pleadings raise issues of fact; (2) whether defendant, as a common carrier, exercised reasonable care and skill in making the delivery and collecting payment for the COD shipment; and (3) whether the defendant breached its contract with plaintiff when it failed to collect the COD amount in accordance with plaintiff's directions.

On March 18, 1988, plaintiff, a California corporation, shipped a COD parcel by defendant carrier to Steven Gunay in New Jersey. Defendant was a corporation registered to do business in the States of California and Illinois as a shipper of small parcels. The parties

agree that plaintiff specifically instructed defendant in writing to accept payment of $1,394.00 in "cash, money order, certified or cashier's check only," that the COD tag contained these instructions, and defendant accepted the parcel for delivery on that basis. Plaintiff paid the required shipping charges.

Thereafter defendant delivered the parcel to Gunay and accepted in payment Gunay's check (which does not appear to be a company check) dated March 2, 1988, payable to plaintiff's order in the amount of $1,394.00. The check was stamped with the word "certified" on the back of the instrument. Plaintiff refused to accept the check when defendant forwarded it, stating that the payment was not in accordance with its shipping instructions since it was not cash, money order, cashier's or certified check, and demanded compliance with its shipping instructions. Defendant refused to comply with plaintiff's demand and again forwarded the original check to plaintiff, who refused to deposit the check for collection but instead filed suit alleging breach of contract and sought to recover the full shipping amount from defendant.

Defendant moved for summary judgment, alleging that its acceptance of the check which was stamped "certified" complied with plaintiff's shipping instructions. Defendant also alleged that as a carrier it had no duty to guaranty the validity of the check.

The trial court entered summary judgment in favor of the defendant and dismissed the complaint with prejudice. Plaintiff appeals the judgment.

Initially, we note that defendant did not collect cash, money order or cashier's check in payment of the COD charges and we need not consider the legal characteristics of any of those forms of payment. Plaintiff contends on appeal that defendant also did not collect a certified check from Gunay in payment of the COD charges and therefore defendant breached their contract by its failure to comply with plaintiff's specific instructions as to the form of payment acceptable to plaintiff.

The defendant responds that, upon delivery of the parcel, the defendant accepted a check from the addressee which was stamped "certified" but which plaintiff claims is an improper and unauthorized instrument because it is not a "certified check." The defendant on appeal cites to its applicable tariffs on file with the Interstate Commerce Commission as controlling and which provide in part at Rule 480:

> "Unless instructions to collect cash only are written on the COD tag, the carrier will accept a check issued by or on behalf of the consignee. When instructions to collect cash are written

on the COD tag, the carrier reserves [the] right to accept cash, cashier's check, certified check, money order or other similar instrument issued by or on behalf of the consignee. All checks (including cashier's check and certified checks) and money orders tendered in payment of COD's will be accepted by the carrier at shipper's risk, including, but not limited to, risk of nonpayment and forgery, and carrier shall not be liable upon any such instrument. All checks and money orders will be transmitted to the shipper together with the carrier's own check for amounts collected in cash."

Defendant argues that accordingly the risk of "nonpayment and forgery" of COD checks rests solely with the plaintiff.

■ Although a copy of the defendant's tariff Rule 480 filed with the Interstate Commerce Commission was not a part of the trial court record and appears for the first time on appeal in defendant's responding brief, we will consider it under the settled doctrine enunciated by this court in *Ingram v. License Appeal Comm'n* (1971), 131 Ill. App. 2d 218, 220, 268 N.E.2d 469, that although an appellant waives a point not raised in the trial court, an appellee may urge any point in support of the judgment on appeal even if not ruled on by the trial court as long as it finds support in the record. In its report of proceedings filed with the court, the defendant stated the trial judge inquired whether the tariff referred to in *The Only Guitar Shop, Inc. v. United Parcel Service* (N.Y. Sup. Ct., Special Term, Saratoga County, August 11, 1988), RJI No. 45—1—88—0728, was operative in the case before the court, and defendant responded that it was. The trial court then entered summary judgment in favor of defendant and dismissed plaintiff's complaint with prejudice.

■ The Illinois Code of Civil Procedure provides, "The [summary] judgment sought shall be rendered without delay if the pleadings, depositions and admissions on file, together with the [supporting] affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).

The record here included plaintiff's verified complaint, defendant's unverified summary judgment motion without affidavit, supported by its memorandum and copies of the cases on which defendant relied, plaintiff's unverified memorandum answer without affidavit to the summary judgment motion, and copies of the cases on which plaintiff relied, and defendant's unverified memorandum reply without affidavit in support of its motion. Defendant filed no answer to the complaint. No transcript of the hearing on the motion was

filed. Each party prepared and filed a separate report of proceedings pursuant to Supreme Court Rule 323(c) (107 Ill. 2d R. 323(c)), both of which were approved and ordered filed by the court.

The parties agree to certain basic facts: the agreement of plaintiff-shipper to ship a parcel COD to Gunay and the agreement of defendant-carrier to deliver it on a COD basis in exchange for "cash, money order, certified or cashier's check" in the designated amount; defendant-carrier delivered the parcel to Gunay and accepted a check drawn on the purported account of Gunay on funds at the Chase Manhattan Bank N.A. in the sum of $1,394.00 payable to "Skipper," which check was stamped with the word "certified" on the back; defendant forwarded the check to plaintiff, who refused to accept the check and returned it to defendant with a demand for payment in conformity with the COD instructions; defendant thereupon returned the same check to plaintiff and plaintiff filed suit.

At the hearing on its motion for summary judgment, defendant argued that no question of material fact existed and that its acceptance of a "check stamped certified" as full compliance of its duty under the COD agreement was a question of law properly raised by its summary judgment motion. Plaintiff argued in opposition that the question of defendant's compliance with their agreement was a question of fact and therefore was inappropriate for summary determination.

■ In considering a motion for summary judgment, all inferences are resolved in favor of respondent, and summary judgment will not be granted unless, viewing all evidence most favorably to the respondent, there is no genuine issue of material fact. (*Rubin v. City National Bank & Trust Co.* (1980), 81 Ill. App. 3d 1020, 1022, 402 N.E.2d 281.) The right of the moving party to judgment must be clear beyond question. (*Rubin v. City National Bank*, 81 Ill. App. 3d at 1022; *Murphy v. Urso* (1981), 88 Ill. 2d 444, 464, 430 N.E.2d 1079.) The right of the moving party to entry of judgment must be clear and free from doubt and the evidence strictly construed against the moving party (*Miklos v. Caliendo* (1987), 161 Ill. App. 3d 132, 137, 514 N.E.2d 35; *Hansen v. Ruby Construction Co.* (1987), 155 Ill. App. 3d 475, 479, 508 N.E.2d 301). Accordingly, entry of summary judgment has two requisites: the absence of any issue as to material fact and the unmistakable conclusion of law that the moving party is entitled to the judgment he seeks.

If what is contained in the pleadings and affidavits would have constituted all of the evidence before the court, and upon such evidence there would be nothing left to be decided by the trier of fact,

then summary judgment is appropriate. (*Fooden v. Board of Governors of State Colleges & Universities* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847; *Kroll v. Sugar Supply Corp.* (1983), 116 Ill. App. 3d 969, 975, 452 N.E.2d 649.) An affidavit in support of a motion for summary judgment is actually a substitute for testimony taken in open court and should meet the same requirements as competent testimony. (*Fooden*, 48 Ill. 2d at 587.) The averments will be taken as true where not controverted by counteraffidavits notwithstanding the existence of contrary allegations in the opposing party's pleadings which merely purport to establish *bona fide* issues of fact. *Fooden*, 48 Ill. 2d at 587.

However, where the facts support more than one conclusion or inference, including one unfavorable to the moving party, the motion for summary judgment should be denied. (*Smothers v. Butler* (1979), 78 Ill. App. 3d 1018, 1020, 398 N.E.2d 12, 14.) Where reasonable minds might draw different inferences from the facts of the case, summary judgment is improper. (*Moran v. Aken* (1981), 93 Ill. App. 3d 774, 777, 417 N.E.2d 846.) Where no fair-minded person could draw different inferences from undisputed facts, there is no triable issue and summary judgment should be granted. (*Peltz v. Chicago Transit Authority* (1975), 31 Ill. App. 3d 948, 951, 335 N.E.2d 74.) However, the movant must be the appropriate party for whom judgment should be entered.

Here the only sworn document before the court was plaintiff's verified complaint. Defendant filed no answer to it. Neither did defendant file any sworn affidavit in support of its motion for summary judgment or in support of its reply to plaintiff's response to the motion. Nor did plaintiff file any supporting sworn affidavit with its response to the motion.

The parties agree that their agreement required that delivery be made only upon the consignee's payment in one of four acceptable forms, among them by certified check. A copy of the challenged "check stamped certified" is part of the record and from the record it appears the original instrument was before the court at the hearing on the motion.

The parties differ on the question of whether the carrier's acceptance of the "check stamped certified" complied with plaintiff shipper's instructions to defendant carrier to deliver the parcel only upon payment of cash, money order, certified or cashier's check and they differ as to whether the check was a certified check.

■ The term "certified check" has a definite and accepted commercial meaning with specific characteristics unique to such an instru-

ment and to no other. Because banking practices are subject to Federal regulation, a search of the Federal statutes lends guidance.

The United States Code defines the term "certified check" as follows:

> "The term 'certified check' means any check with respect to which a depository institution certifies that—
> (A) the signature on the check is genuine; and
> (B) such depository institution has set aside funds which—
> (i) are equal to the amount of the check; and
> (ii) will be used only to pay such check." 12 U.S.C. §4001(6) (Supp. V 1987).

Black's Law Dictionary defines "certified check" as "[t]he check of a depositor drawn on a bank on the face of which the bank has written or stamped the words 'accepted' or 'certified' with the date and signature of a bank official. The check then becomes the obligation of the bank. The certification of a check is a statement of fact, amounting to an estoppel of the bank to deny liability; a warranty that sufficient funds are on deposit and have been set aside. It means that [the] bank holds money to pay [the] check and is liable to pay it to [the] proper party." Black's Law Dictionary 207 (5th ed. 1981).

The parties to a check are the drawer, who signs the check authorizing payment from funds on deposit in his account, the drawee, which is the bank upon which the check is drawn, and to whom the direction to pay is given, and the payee, who is the person to whom the check is payable.

A certified check is one which a proper officer of the drawee bank recognizes and accepts as an appropriation of the amount specified thereon, for payment to the payee or holder (9 C.J.S. *Banks & Banking* §371 at 788 (1938).) A certified check is in effect an ordinary bill of exchange of an individual or corporation, drawn on a bank by a depositor and recognized and accepted by a proper officer of the bank as an appropriation of the amount specified therein to the payee named; a check drawn by a depositor on funds to his credit in a bank which a proper officer of the bank certifies will be paid when duly presented for payment. 9 C.J.S. *Banks & Banking* §371, at 788 (1938).

Certification implies that the check is drawn on sufficient funds in the bank's possession, that they have been set aside for its payment, and that they will be thus applied when the check is presented for that purpose and binds the bank as a direct promisor or debtor of the holder (9 C.J.S. *Banks & Banking* §373, at 789-90 (1938).) By the certification, the bank enters into an absolute undertaking to pay the

check when it is presented to the party entitled to the funds and guarantees that the signature of the drawer is genuine and that he has the capacity and authority to draw the instrument. (9 C.J.S. *Banks & Banking* §373, at 789 (1938).) The certification, in legal contemplation, transfers the funds represented by the check from the credit of the maker to that of the payee. (9 C.J.S. *Banks & Banking* §373, at 790 (1938).) Certified checks may be considered as the equivalent of cash. 9 C.J.S. *Banks & Banking* §380, at 795 (1938).

The Illinois Uniform Commercial Code at section 3—411 states that "[c]ertification of a check is acceptance. Where a holder procures certification the drawer and all prior endorsers are discharged." (Ill. Rev. Stat. 1987, ch. 26, par. 3—411(i).) The statute further defines "acceptance": "(1) Acceptance is the drawee's signed engagement to honor the draft as presented. It must be written on the draft, and may consist of his signature alone. It becomes operative when completed by delivery or notification." Ill. Rev. Stat. 1987, ch. 26, par. 3—410(1).

The supreme court of Iowa considered the legal requirements for certification of a check (*Menke v. Board of Education* (Iowa 1973), 211 N.W.2d 601) and whether the stamped certification placed on the checks without the signature of an authorized bank official was sufficient at law to constitute proper certification of the check. There the bank contended that the stamped certification was sufficient. The court did not agree. In its analysis, the court rejected the stamped certification and observed that rubber stamps may be easily copied and secured with facility and reasoned that it is consistent with customary certification practice to conclude that the bank had adopted the stamp but that the present intention to authenticate a check required the script signature of a bank official to indicate certification. The court held, therefore, that a check stamped with words of certification and a signature line, but without any written, printed, stamped or facsimile signature thereon, does not provide sufficient evidence of intent to authenticate certification by a bank to a holder in a commercial transaction and, as a matter of law, does not comply with the legal requirement for certification. The purported check therefore was found to be a nonconforming instrument under the agreement between the parties. *Menke v. Board of Education* (Iowa 1973), 211 N.W.2d 601.

The plaintiff-shipper here clearly sought the protection of bank certification if the carrier were to accept a certified check in payment of the COD charges by the consignee. The check accepted by the carrier bore the stamped word "certified," but no indication that

the purported certification was stamped on the check by the Chase Manhattan Bank nor that the purported certification was by an authorized bank officer or signatory. The word "certified" did not appear on the face of the check but instead was stamped diagonally across the back with no words indicating any bank responsible for certification and signatory in any official bank officer capacity. It is clear to us that the "check stamped certified" is not the certified check plaintiff instructed carrier to accept.

We note that Illinois reviewing courts have not addressed the precise question of a carrier's responsibility to the shipper in accepting a "check stamped certified" as a "certified check" in payment of a COD charge in accordance with shipper's instructions although other jurisdictions have considered similar questions. The parties cite several decisions from other jurisdictions in support of their respective positions.

■■ The Appellate Court, First District, is not bound to follow decisions by Federal courts other than the United States Supreme Court, or by courts of any State other than Illinois (*Corbett v. Devon Bank* (1973), 12 Ill. App. 3d 559, 299 N.E.2d 521). Decisions of the reviewing courts of foreign jurisdictions are not binding on Illinois courts (*People v. Chandler* (1980), 88 Ill. App. 3d 644, 653, 411 N.E.2d 283 (supplemental opinion on denial of rehearing)), although decisions of courts of the respective States, where relevant, should be examined for such value as Illinois courts may find in them when out-of-State courts have construed certain language and the Illinois courts have not. *In re Estate of Melvin* (1972), 5 Ill. App. 3d 463, 283 N.E.2d 303.

■■ The obligations between a shipper and a carrier arise out of their contractual agreement, here out of a COD agreement whereby the carrier agreed to deliver shipper's goods and to accept in payment cash, money order, certified or cashier's check, for which service shipper paid the carrier its requisite fee. Where goods are tendered to a carrier with specific shipping directions to which it assents, the carrier assumes the obligation to follow such directions. (13 C.J.S. *Carriers* §405, at 350 (1990).) All properly authorized tariff rules and regulations published by carriers are part of the shipper-carrier contract in legal effect. *Eastern Motor Express, Inc. v. A. Maschmeijer, Jr., Inc.* (2d Cir. 1957), 247 F.2d 826, *cert. denied* (1958), 355 U.S. 959, 2 L. Ed. 2d 534, 78 S. Ct. 535.

Plaintiff argues that defendant breached its duty to comply with the agreement between them by its acceptance of an improper, unauthorized form of payment and, based solely on the record before the

trial court, there was a genuine issue of fact as to defendant's failure to exercise due care as plaintiff's agent, as alleged in the only verified pleading before the court. Plaintiff contends that summary judgment in favor of defendant is inappropriate and cites in support *Littleton Stamp & Coin Co. v. Delta Airlines, Inc.* (1st Cir. 1975), 778 F.2d 53, 56-57, where the reviewing court reversed the trial court's grant of summary judgment in favor of the carrier on the grounds that the carrier's exercise of due care was a genuine issue of material fact and therefore summary judgment was inappropriate. Similarly in *American Airlines, Inc. v. Swest Inc.* (Texas 1986), 707 S.W.2d 545, the Texas Supreme Court followed *Littleton* and held that the carrier has the duty to exercise reasonable care when collecting payment for the shipper, and whether reasonable care has been exercised is a question of fact to be determined by the fact finder.

Defendant responds that the sole issue here is whether it was proper for the carrier to accept this check from the consignee. Defendant argues that the duty to collect payment on plaintiff's behalf is contractual and acknowledges that defendant as its agent has a duty to exercise reasonable care in making collection according to shipper's directions. Defendant submits that this question requires interpretation of the contract, which is within the province of the court and therefore is appropriate for determination by summary judgment, since the only issue for the court to determine was whether as a matter of law it was proper for the carrier to accept the "check stamped certified" as payment by "certified check" in accordance with plaintiff-shipper's instructions. The defendant concludes that the trial court found that, once the defendant-carrier accepted the check from Gunay and delivered it to plaintiff-shipper, its duty under their agreement ended and that this finding is well supported by law.

The defendant relies on a decision by the Kentucky Court of Appeals (*Shockley v. United Parcel Service, Inc.* (Ky. App. 1984), 664 S.W.2d 523) which affirmed the trial court's entry of summary judgment in favor of UPS. In *Shockley*, plaintiff argued that the carrier failed to accept "cash or company check" in accordance with shipper's instructions when it accepted a check without a company name imprinted but with a handwritten company name appearing on the face of the check. The shipper took the check to his bank to determine its validity, and although upon inquiry he was told the account on which the check was drawn had been closed, he deposited the check anyway. The *Shockley* court defined the two-prong test for summary judgment determination to be: (1) whether there exists any genuine issue of material fact, and (2) whether the movant is entitled to judgment as a

matter of law, after all inferences are construed in favor of the non-moving party. The court held that under these facts UPS was given no directions to provide a means of identifying an acceptable check under the general term "company check" and concluded that "placing responsibility upon UPS to ascertain the sufficiency of the checks received to satisfy the requirements of the order, in light of the directions given to UPS, creates an undue burden upon UPS in performing its duties. UPS is not involved in the banking business and is not in a position to credit or discredit negotiable instruments beyond their duty of examining the face of the check to determine whether it comports to instructions given to UPS." *Shockley*, 664 S.W.2d at 524-25.

■ The defendant argued before the trial court that the question here is not whether the carrier breached its duty as a banker in accepting the nonconforming check, but rather whether it breached its duty as a reasonable carrier. We believe that the clearly reasonable view is that the carrier who agrees to accept a certified check on shipper's behalf in payment of COD charges has a duty to inform himself as to the legal characteristics of a certified check in order to comply with the shipper's express instructions to which he has agreed. He must then take the next step to educate his employees as to its characteristics and legal requirements, since they carry out the carrier's contractual obligations to follow shipper's instructions consistent with the shipper-carrier contract.

While the *Shockley* case dealt with specific authorization to accept a company check, defendant cites *The Only Guitar Shop* case, a New York trial court decision, wherein UPS was granted summary judgment on facts which defendant argues are nearly identical to the case before us, and on which the trial court relied. Two COD deliveries were involved: for the first, the carrier was to collect cash, or bank or certified funds, for the second, he was to collect cash. In both deliveries the carrier accepted checks "apparently stamped 'certified' apparently by the drawer of the check" which proved to be worthless when deposited unconditionally for collection by the shipper. The court refers to UPS's tariff Rule 480, concluding that it is binding on the parties as part of the agreement between them, that carrier's acceptance of all checks tendered in payment of COD's are accepted at shipper's risk and that the tariff clearly exempts the carrier from liability for taking a check which proved to be worthless. The court concluded that although the shipper waived its objection to the carrier's action by depositing these checks, even if the shipper had attempted to protect its rights against the carrier by conditionally accepting the checks, the "tariff would seem to protect the carrier."

As we earlier observed, the decisions of reviewing courts of foreign jurisdictions are not binding on Illinois courts, and it necessarily follows that the decisions of the trial courts of foreign jurisdictions have no precedential value in Illinois disputes on appeal or at the trial level. We therefore decline to consider as precedential authority here the court's findings in *The Only Guitar Shop* case, since it clearly is an opinion of the trial judge in New York which has not been tested on appeal.

We also note that in both the *Shockley* and *The Only Guitar Shop* cases, while the nonconforming nature of the check was discussed in each case, the shipper accepted the questionable check, depositing it with his own bank, and therefore was held to have ratified the carrier's acceptance of the nonconforming check. Defendant also distinguishes the *Littleton* and *American Airlines* cases from the factual scenario before us by pointing out that in each of those cases the shipper's instructions specifically imposed the duty on the carrier to determine the validity of the checks offered in payment prior to delivering the parcel to the consignee.

Plaintiff relies on *Video Station v. Frey's Motor Express, Inc.* (1983), 188 N.J. Super. 494, 457 A. 2d 1217, where the appellate court affirmed the trial court's judgment in favor of the shipper and against the carrier, holding that the carrier in accepting a check stamped "certified" but not signed by the drawee bank had failed to conform to reasonable commercial standards in carrying out its contractual undertaking. The appellate court reasoned that, under a COD shipment, the carrier acts in two capacities: (1) as a bailee to transport the shipper's goods to the consignee, and (2) as shipper's agent to collect the price of the goods in accordance with their agreement. As a common carrier and bailee, he has the common law duties to receive, transport, care for and deliver the goods. As the agent of the shipper to collect payment for the goods upon delivery, he assumes an additional duty which is a matter of private contract and not a common law duty. The court defined the standard of care applicable to an agent as follows: an agent to collect a debt must exercise ordinary care, skill and diligence in the performance of the duties incident to the undertaking. The court found in that case that the carrier breached its contractual duty to exercise ordinary care, skill and diligence by accepting as certified a check not bearing the written signature of a bank officer which certification of a check requires. The reviewing court adopted the trial court's observation that "a defendant which is in the business of accepting COD shipments for delivery should reasonably be required to educate its agents and employees as to the identifying

characteristics of a certified check." (*Video Station*, 188 N.J. Super. at 499, 457 A.2d at 1220.) Earlier in this opinion we held that the carrier who agrees to be bound by shipper's instructions authorizing him to accept a certified check in payment of COD charges has the duty to familiarize himself as to the legal characteristics of a certified check. Clearly, we also agree with the reasoning of the court in *Video Station* that the carrier is required to educate its agents and employees of the identifying characteristics of a certified check.

Plaintiff also cites the *Littleton* and *American Airlines* cases for their discussions of the carrier's duty to the shipper under the terms of its COD contract agreement. In *Littleton* the court agreed that the COD contract established an agency in the carrier to collect a debt for the shipper and that the carrier had a duty of using reasonable care and skill in making such collections in accordance with the directions of the shipper. (*Littleton*, 778 F.2d at 55.) The court discussed a number of cases similar on facts which reached conflicting results on the liability of a carrier who accepts a forged or nonconforming check. That court concluded that the issue of due care in light of the facts of the case was a question for the fact finder and was inappropriate for summary judgment.

The court in *American Airlines*, in discussing the reasonable care standard imposed on the carrier in COD shipments, stated that the question of whether carrier's actions met the standard was to be determined by the fact finder. In that case the carrier appealed the reversal by the appellate court of the trial court's judgment in favor of carrier and against the shipper for carrier's acceptance of checks where nothing apparent on the face of the check would alert anyone that certification was forged. The shipper accepted and deposited the check. The case went to trial before a jury, and judgment then was entered by the court. No summary judgment was requested. The Texas Supreme Court reversed the appellate court and affirmed the trial court judgment, holding that while the carrier had the duty to exercise reasonable care when collecting payments for the shipper, it did not have the absolute duty to verify certified checks and that the question of the method of payment contemplated was a disputed fact issue which had been resolved by the jury.

Finally, we consider defendant's argument that even if the check accepted from Gunay was not a certified check, UPS is protected by Rule 480 of its tariffs filed with the Interstate Commerce Commission, quoted earlier in this opinion. That rule provides that the carrier reserves the right to accept cash, cashier's check, certified check, money order or similar instrument issued by consignee and that all

such checks and money orders tendered in payment of COD's will be accepted by the carrier at shipper's risk, including, but not limited to, risk of nonpayment and forgery. Defendant cites the reference to the Rule 480 tariff by the trial court in *The Only Guitar Shop* case in support of its argument that the tariff protects UPS here and also notes that the trial judge inquired as to its application in this case and then entered judgment for defendant after being told that it applied. We have stated that we consider the trial court's decision in *The Only Guitar Shop* case not precedent for us here, but we also note that the court's reference to the tariff was clearly *dicta* in the cited case and not the basis of its ultimate judgment in favor of UPS.

A closer scrutiny of the Rule 480 tariff discloses that it provides in summary:

(1) That the carrier will accept consignee's check in payment of COD charges unless the shipper's tag instructs carrier to collect cash only.

(2) Carrier reserves to itself the right to accept cash, cashier's check, certified check, money order "or other similar instrument" issued by consignee, when instructions to collect cash are written on the COD tag.

(3) All checks, cashier's checks, certified checks and money orders will be accepted by carrier at shipper's risk *including but not limited to* risk of nonpayment and forgery.

(4) Carrier shall not be liable upon any such instrument.

In plain language, while the carrier here accepted the fee from shipper for COD delivery and was to accept in payment of COD charges from consignee payment in the forms of cash, money order, certified check or cashier's check, the carrier under its tariff contends that it can accept any form of payment even though the express language of the shipper-carrier contract restricts payment to only four acceptable forms. The defendant concludes that, under the disclaimer provision of its tariff rule, it can accept any form of check in payment regardless of the shipper's specific instruction and infers that, even though the "check stamped certified" does not meet the legal and commercial requirements of a "certified check," the shipper is bound to accept it in payment and absolve the carrier of any further duty under their agreement.

We do not agree and are of the opinion that the defendant can find no comfort in its tariff provisions as support for its position here. Where the parties have expressly agreed to the precise terms of their contract, the specifics of their bargained agreement must take precedence over the general exculpatory language of the filed tariffs under

which the carrier does business. To hold otherwise would render any instruction given by the shipper meaningless if the carrier on its own whim could disregard the shipper's express direction by accepting any form of payment offered by the consignee. Such a view makes no sense and would render contract terms unenforceable at best and meaningless at worst. Basic to any contract is the rule that the general provisions must give way to the specific.

The check accepted by the defendant carrier here bore no bank certification stamp or authorized bank signature either on the face of the check or its reverse side. The stamped word "certified" on the reverse side bearing no bank designation or signature did not comply with the legal requirements to constitute a certified check and therefore was an unauthorized form of payment which plaintiff-shipper properly rejected. The plaintiff did not deposit the check or in any way ratify the defendant's actions but instead demanded compliance with its shipping instructions, and when defendant refused to comply, plaintiff filed suit.

We conclude that defendant-carrier accepted a "check stamped certified," that the acceptance of that check did not conform to the COD shipping instructions of the agreement between the parties because it did not meet the requirements of a certified check and that plaintiff's rejection of the nonconforming check was clearly not a waiver of the contract requirements or a ratification of defendant's action in accepting such a check in payment of the COD charges.

Because the question before the court is whether the defendant exercised reasonable care in following plaintiff's instruction by accepting the "check stamped certified" and clearly is a question of material fact which precludes summary judgment determination of the controversy, and because we have found that based on the facts of this case the defendant would not be entitled to judgment even if there were no question of material fact remaining to be determined, we find that the judgment of the trial court must be reversed.

For all of the foregoing reasons, we reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.

Judgment reversed and remanded for further proceedings.

RAKOWSKI, P.J., and McNAMARA, J., concur.