1-95-1658)
1-95-2232) Cons.

THE KROGER COMPANY, ) Appeal from the
 ) Circuit Court of
 Plaintiff-Appellee, ) Cook County.
 )
 v. ) 
 ) 
THE DEPARTMENT OF REVENUE; and ) 
RAYMOND T. WAGNER, JR., Director ) 
of Revenue, ) Honorable
 ) Randye A. Kogan,
 Defendants-Appellants. ) Judge Presiding.

 PRESIDING JUSTICE HARTMAN delivered the modified opinion of
the court upon denial of rehearing:
 The Illinois Department of Revenue (Department) appeals from
the circuit court's ruling in an administrative review action
brought by The Kroger Company (Kroger). The Department's
administrative decision determined that gains realized by Kroger in
the sale of its leasehold interests in realty, which Kroger had
claimed as "nonbusiness income," were "business income" and,
therefore, taxable.
 On administrative review, the circuit court reversed the
Department's decision, finding that the Department incorrectly
applied the statutory definition of business income by relying upon
the "functional test." The court concluded that the gains realized
by Kroger were nonbusiness income. The Department appeals,
contending (1) "business income," as set forth in section
1501(a)(1) of the Illinois Income Tax Act (Ill. Rev. Stat. 1985,
ch. 120, par. 15-1501(a)(1) (now 35 ILCS 5/1501(a)(1) (West
1994))), embodies the "functional test," (2) its determination was
not against the manifest weight of the evidence, (3) the gain from
Kroger's leasehold interests must be excluded from the numerator of
the Illinois sales factor in determining Kroger's business income
apportionable to Illinois, and (4) Kroger must pay penalties under
section 1005 of the Illinois Income Tax Act. Ill. Rev. Stat. 1985,
ch. 120, par. 10-1005 (current version at 35 ILCS 5/1005 (West
1994)).
 At the administrative level, the parties presented the case
upon a stipulation of facts and joint exhibits. Kroger, a
publicly-held Ohio corporation, operated food and convenience
stores during fiscal year 1986 (FY86). A substantial majority of
Kroger's businesses operated under leaseholds generally of 10 to 25
years. During FY86, Kroger was engaged in retail grocery business
within and outside Illinois and owned four unitary subsidiaries
which were engaged in the retail drug store business, also within
and outside Illinois: two first-tier subsidiaries, Superx Drugs
Corporation (Superx) and Hook Drugs, Inc. (Hook), and two
subsidiaries of Hook: Hook Drugs, Inc. of Michigan and Hook Drugs,
Inc. of Illinois.
 Superx, a Michigan corporation, operated drug stores, one-half
of which were adjacent to Kroger Supermarkets. Hook, an Indiana
corporation, was acquired by Kroger on May 28, 1985. During July,
1986, Kroger undertook a corporate restructuring program in which
it sold or closed its Superx and Hook separately established drug
stores and all unprofitable food stores. Kroger proceeded with the
restructuring of its retail drug store business in part through a
leveraged partial divestiture of most of its Superx and Hook drug
stores. In its 1986 Annual Report, Kroger asserted that it had
sold a substantial majority of its retail drug store business in
FY86.
 By agreement dated December 9, 1986, the assets of 658 Superx
and Hook separately established drug stores and Hook's stock in
Hook Drugs, Inc. of Illinois and Michigan were sold in the
leveraged partial divestiture to Hook-Superx, Inc. (HSI), a newly-
formed privately-held corporation. Hook merged into HSI. Kroger
received cash totaling $411,851,959 from the sale of these drug
stores. The assets sold to HSI included tangible and intangible
assets. Some of the intangible assets included leasehold
interests.
 In these 1986 restructuring transactions, Kroger recognized
both gains and losses on tangible and intangible assets sold. In
1987, Kroger filed its Illinois income tax return and an amended
tax return on its own behalf and that of its subsidiaries for the
taxable year ending January 3, 1987. Kroger subsequently received
the refund of $461,544 that it claimed.
 After conducting an audit of Kroger's returns, the Department
asserted that the gains realized from the sales of Kroger's
leasehold interests were business income apportionable to Illinois,
pursuant to section 304 of the Illinois Income Tax Act (the IITA). 
Ill. Rev. Stat. 1985, ch. 120, par. 3-304 (current version at 35
ILCS 5/304 (West 1994)). The Department recomputed Kroger's
Illinois taxable income accordingly and issued a notice of
deficiency in the amount of $428,365 based on a tax liability of
$718,496 and a determination that Kroger had paid $290,131 in
taxes. A penalty of $74,219 was imposed pursuant to section 1005
of the IITA. Ill. Rev. Stat. 1985, ch. 120, par. 10-1005 (current
version at 35 ILCS 5/1005 (West 1994)).
 Kroger filed a timely protest to the deficiency notice,
disputing the determination that gains from the sale of the
leasehold interests were business income. An administrative law
judge recommended the notice of deficiency be upheld in its
entirety. The Department subsequently adopted the recommended
decision, which recognized that:
 "There are two tests to be applied in any
 determination of the business or nonbusiness
 character of an item of income: (1) the
 Transactional test, and; [sic] (2) the
 Functional test. If the item of income
 involved meets either of the tests, it is
 business income and therefore subject to
 apportionment. National Realty & Investment
 Co. v. Department of Revenue, 144 Ill. App. 3d
 541, 494 N.E.2d 924 (1986)."
 The decision concluded that the gains from the sale of the
leasehold interests were business income under the functional test
because prior to the sale Kroger used both the tangible and
intangible property associated with the stores "for the production
of business income in its retail trade or business" and sold the
assets in the regular course of business.
 Kroger thereafter filed a circuit court complaint for
administrative review. The circuit court reversed the Department's
decision on the theory that the plain meaning of business income,
as defined in section 1501(a)(1), is "income deriving from
transactions or actions normally conducted by a business." The
court observed that section 1501(a)(1) "specifies an inclusion in
business income of the sale of tangible and intangible property
assets if the 'acquisition, management, and disposition' of those
assets were an 'integral part of the taxpayer's trade.'" See Ill.
Rev. Stat. 1985, ch. 120, par. 15-1501(a)(1) (now 35 ILCS
5/1501(a)(1) (West 1994)). The court reasoned that Kroger's
business was the "sale of food and drug items" in FY86 and rejected
the Department's contention that the case of National Realty &
Investment Co. v. Department of Revenue, 144 Ill. App. 3d 541, 553,
494 N.E.2d 924 (1986) (National Realty), supported the use of both
the functional and transactional tests because its discussion of
the functional test was obiter dictum. The Department appeals. 
For reasons which follow, we reverse.
 I
 The Department identifies error in the circuit court's
construction of the IITA's business income definition because the
term is defined by two clauses, each of which has a distinct
meaning. Kroger maintains the second clause of the statute is a
subset of the first, relying upon the last antecedent doctrine.
 The IITA provides for the allocation of nonbusiness income and
the apportionment of business income. National Realty, 144 Ill.
App. 3d at 553. Under the IITA, business income is apportioned
according to a three-factor formula; nonbusiness income is
allocable to Illinois only if the property is located in this
State. National Realty, 144 Ill. App. 3d at 553.
 The primary rule of judicial statutory construction is to
ascertain and give effect to the intention of the legislature. 
Abrahamson v. Illinois Department of Professional Regulation, 153
Ill. 2d 76, 91, 606 N.E.2d 1111 (1992). This inquiry begins with
the language of the statute and, when necessary, includes the
reasons for the statute's enactment and the purposes sought to be
obtained. People ex rel. Cason v. Ring, 41 Ill. 2d 305, 310, 242
N.E.2d 267 (1968). A statute must be read as a whole and construed
so that no word or phrase is rendered superfluous or meaningless. 
See Kraft, Inc. v. Edgar, 138 Ill. 2d 178, 189, 561 N.E.2d 656
(1990). 
 The IITA defines business income as follows:
 "The term "business income" means income
 arising from transactions and activity in the
 regular course of the taxpayer's trade or
 business, net of the deductions allocable
 thereto, and includes income from tangible and
 intangible property if the acquisition,
 management, and disposition of the property
 constitute integral parts of the taxpayer's
 regular trade or business operations. Such
 term does not include compensation or the
 deductions allocable thereto." Ill. Rev.
 Stat. 1985, ch. 120, par. 15-1501(a)(1) (now
 35 ILCS 5/1501(a)(1) (West 1994)).
 Nonbusiness income is defined as all income other than business
income. Ill. Rev. Stat. 1985, ch. 120, par. 15-1501(a)(13) (now
ILCS 5/1501(a)(13) (West 1994)). A taxpayer's income is business
income unless it is clearly classifiable as nonbusiness income. 
The taxpayer has the burden of demonstrating that a particular item
of income is nonbusiness income. National Realty, 144 Ill. App. 3d
at 553-54.
 Kroger's reliance on the last antecedent doctrine is misplaced
because section 1501(a)(1) does not contain a misplaced modifier. 
See generally City of Mount Carmel v. Partee, 74 Ill. 2d 371, 373,
385 N.E.2d 687 (1979). Rather, section 1501(a)(1) contains a
compound predicate; therefore, the statute can be read as "business
income" means the first clause and "business income" includes the
second clause.
 Although Kroger maintains that the second clause of section
1501(a)(1) merely clarifies the first clause, Kroger's argument
must be rejected where a plain reading of the second clause expands
the definition of business income. The first clause of section
1501(a)(1) defines business income as income arising from
transactions in the regular course of business. The second clause
defines business income as income from tangible and intangible
property if the disposition of the property constitutes "integral
parts of the taxpayer's regular trade or business operations." 
Ill. Rev. Stat. 1985, ch. 120, par. 15-1501(a)(1) (now 35 ILCS
5/1501(a)(1) (West 1994)). "[R]egular course of business" is
discarded in the second clause. The second clause, then, contains
a different definition, not one which simply clarifies.
 The second definition refers to the conditions of ownership of
property by the taxpayer; it is not limited to a taxpayer's trade
or business, such as Kroger's retail business, but includes
"operations" of the taxpayer's business, such as the sale of
leasehold interests. In its analysis of the statute, the circuit
court improperly treated the second clause as an "inclusion" and
omitted the terms "business operations." The legislature did not
duplicate the language of the first clause in the second clause
and, therefore, must have intended to establish a second definition
for business income. The plain meaning of section 1501(a)(1)
embraces two definitions of business income.
 This conclusion is supported by Illinois case law, which has
defined these two definitions as the transactional and functional
tests. Dover Corp. v. Department of Revenue, 271 Ill. App. 3d 700,
711-12, 648 N.E.2d 1089 (Dover Corp.), appeal denied, 163 Ill. 2d
552, 657 N.E.2d 618 (1995); National Realty, 144 Ill. App. 3d at
554.
 In National Realty, the parties agreed that the transactional
and functional tests established business income. 144 Ill. App. 3d
at 554. The National Realty court concluded that "both the
transactional and functional tests" were met under the facts
presented and, therefore, the gain was taxable as business income. 
144 Ill. App. 3d at 555. Contrary to Kroger's contention, National
Realty's discussion of the functional test, although not central to
the decision, was not obiter dictum because the court there held
that the gain was taxable as business income by finding that both
tests were sufficiently met. The functional test was not mentioned
as an aside or "by the way." See Cates v. Cates, 156 Ill. 2d 76,
80, 619 N.E.2d 715 (1993). Additionally, the Dover Corp. court, in
discussing the definition of business income, cited National Realty
for the proposition that section 1501(a)(1) embodies both the
transactional and functional tests. 271 Ill. App. 3d at 711-12.
 Since the decision in National Realty, the legislature has
amended the definitional section of the IITA six times. See 35
ILCS 5/1501 (West 1994 & Supp. 1996). The definition of "business
income," however, was not changed. A court's construction of a
statute is considered part of the statute itself, unless and until
the legislature amends it contrary to the interpretation. Miller
v. Lockett, 98 Ill. 2d 478, 483, 457 N.E.2d 14 (1983). The
National Realty and Dover Corp.'s interpretations of section
1501(a)(1) are, therefore, part of the statute.
 Kroger alternatively asserts that if the second clause
establishes a separate test for business income, the test is not
the "functional test" espoused by the Department. The Department
contends that the history of the Uniform Division of Income for Tax
Purposes Act (the UDITPA), from which the IITA was modeled, and the
legislative history of section 1501(a)(1) support the use of the
"functional test."
 The IITA, adopted in 1969, was modeled after the UDITPA, which
was the first major attempt in promoting uniformity among the
states. Caterpillar Tractor Co. v. Lenckos, 84 Ill. 2d 102, 118,
417 N.E.2d 1343 (1981). The UDITPA and the IITA contain the same
definitions for business and nonbusiness income. Uniform Division
of Income for Tax Purposes Act, 7A U.L.A. 1(a), (e) (1985); Ill.
Rev. Stat. 1985, ch. 120, par. 15-1501(a)(1), (13) (now 35 ILCS
5/1501(a)(1), (13) (West 1994)). The UDITPA was incorporated into
article IV of the Multistate Tax Compact (MTC), which became
effective in Illinois on July 1, 1967. Lenckos, 84 Ill. 2d at 118. 
Illinois subsequently withdrew from the MTC in 1975 but the IITA is
construed in conformity with the UDITPA where the language of the
two are identical. See generally Lenckos, 84 Ill. 2d at 120-21. 
Prior to the adoption of the IITA, commentary to the UDITPA
provided that "[i]ncome from the disposition of property used in a
trade or business of the taxpayer is includible within the meaning
of business income." Uniform Division of Income for Tax Purposes
Act, 7A U.L.A. 1 cmt. (1966), reprinted in 2 Multistate Corporate
Income Tax Guide (CCH)  8805.
 Kroger contends the legislative history was superseded by
Western Natural Gas Co. v. McDonald, 446 P.2d 781 (Kan. 1968)
(Western Natural Gas), which interpreted the UDITPA's definition of
"business income" prior to the enactment of the IITA. Although the
Western Natural Gas court determined that "business income"
included only the transactional test, another state's construction
of a uniform act prior to Illinois' adoption of the act is
persuasive, but not binding, authority. People v. Mills, 40 Ill.
2d 4, 11, 237 N.E.2d 697 (1968). Although Western Natural Gas was
recently reaffirmed, its analysis was criticized by three
dissenting justices, who recommended modifying Western Natural Gas
to recognize both the transactional and functional tests. Appeal
of Chief Industries, Inc., 875 P.2d 278, 286-89 (Kan. 1994).
 Kroger contends the courts in other UDITPA states have
overwhelmingly rejected the functional test; however, other courts
have not construed the provision uniformly. The decisions from
other states are not binding on the courts of Illinois but, where
relevant, such decisions should be examined for "such value as
Illinois courts may find in them." Skipper Marine Electronics,
Inc. v. United Parcel Service, Inc., 210 Ill. App. 3d 231, 239, 569
N.E.2d 55 (1991). Kroger's reliance upon other states' case law is
particularly misplaced where those states recognize two different
tests or have amended their law in response to judicial
constructions of the definition of business income. See Iowa Code
Ann.  422.32 (Supp. 1996); 1996 Kan. Sess. Laws ch. 264, sec. 1,
 79-3271; Kewanee Industries, Inc. v. Reese, 845 P.2d 1238 (N.M.
1993); Ross-Araco, Corp. v. Commonwealth, 644 A.2d 235 (Pa. Commw.
Ct. 1994), aff'd, 674 A.2d 691 (Pa. 1996). Several states
recognize the two separate definitions of business income. See
generally District of Columbia v. Pierce Associates, Inc., 462 A.2d
1129 (D.C. 1983). Kroger's contention, therefore, does not
persuade. The circuit court erred in holding that section
1501(a)(1) does not embrace the transactional and functional tests. 
Accordingly, the order of the circuit court is reversed.
 II
 The Department next argues its finding that Kroger's gain was
business income was not against the manifest weight of the evidence
and the circuit court erred in reaching a different conclusion. 
Kroger claims there are no issues of fact for review under the
manifest weight of the evidence standard because the Department's
conclusion was a finding of law.
 The findings and conclusions of an administrative agency on
questions of fact are prima facie true and correct. Obasi v.
Department of Professional Regulation, 266 Ill. App. 3d 693, 698-
99, 639 N.E.2d 1318 (1994). "The legal effect given to undisputed
facts is a matter of law reviewable by an appellate tribunal, and
a reviewing court is not bound by either an agency's or circuit
court's conclusions of law." Obasi, 266 Ill. App. 3d at 699. When
a court finds that the legal conclusions of an agency are
erroneous, those conclusions are not entitled to deference because
they involve administrative interpretation of a statute it is
charged with enforcing. Obasi, 266 Ill. App. 3d at 699.
 In the present case, the facts are undisputed. Accordingly,
this court is not bound either by the Department's or the circuit
court's conclusions of law. Obasi, 266 Ill. App. 3d at 699.
 Kroger leased a majority of the properties used in its
business. Under the functional test, the relevant inquiry is
whether the property was used in the taxpayer's regular trade or
business operations. Dover Corp., 271 Ill. App. 3d at 712. Kroger
places great emphasis on the fact that the restructuring was an
extraordinary event, yet Kroger's report to the Securities Exchange
Commission contradicts its argument. The report states that Kroger
"is continuously opening new food and drug stores and assessing
existing stores as to possible remodeling, enlarging or closing." 
(Emphasis added.) Kroger's 1986 shareholder's report states that
Kroger uses a strategy of "flexible responsiveness" in which it
continuously analyzes "the performance of all corporate assets" and
makes "changes when necessary"; the restructuring was a "direct
outgrowth" of Kroger's "management process." (Emphases added.) 
The Department properly could have concluded that the leasehold
interests were an integral part of Kroger's regular trade or
business operations. See 86 Ill. Adm. Code 100.3010 (1996);
District of Columbia v. Pierce Associates, Inc., 462 A.2d 1129
(D.C. 1983); Kewanee Industries, Inc. v. Reese, 845 P.2d 1238 (N.M.
1993). Kroger's gains from the leasehold interests were business
income and the circuit court's determination to the contrary must
be reversed.
 III
 Kroger next contends that even if the gain is business income,
it must be excluded from the numerator of the Illinois sales factor
because the sales were negotiated at Kroger's Ohio headquarters.
 Sales other than sales of tangible personal property are
included in the Illinois numerator only if the "income-producing
activity" is performed in Illinois. Ill. Rev. Stat. 1985, ch. 120,
par. 3-304 (current version at 35 ILCS 5/304 (West 1994)). When a
corporation derives income from both Illinois and one or more other
states, it is necessary to apportion the percentage of its income
which may be taxed by this State. Continental Illinois National
Bank & Trust Co. v. Lenckos, 102 Ill. 2d 210, 220, 464 N.E.2d 1064
(1981). Section 304 of the IITA provides that the property factor
in the three-factor formula:
 "is a fraction, the numerator of which is the
 average value of the person's real and
 tangible personal property owned or rented and
 used in the trade or business in this State
 during the taxable year and the denominator of
 which is the average value of all the person's
 real and tangible personal property owned or
 rented and used in the trade or business
 during the taxable year." Ill. Rev. Stat.
 1985, ch. 120, par. 3-304(a)(1)(A) (now 35
 ILCS 5/304(a)(1)(A) (West 1994)).
 Although Kroger maintains the income-producing activity is deemed
to occur at the taxpayer's corporate headquarters, Kroger has
failed to cite any authority for this proposition and section
304(a)(1)(A) negates Kroger's assertion. Ill. Rev. Stat. 1985, ch.
120, par. 3-304(a)(1)(A) (current version at 35 ILCS 5/304(a)(1)(A)
(West 1994)). The Department correctly determined that the income
producing activity associated with Kroger's Illinois leaseholds
occurred in Illinois.
 IV
 Kroger next contends that it is not liable for penalties
because it overpaid taxes for FY86 and its failure to embrace the
functional test was reasonable.
 Section 1005(a) of the IITA provides penalties for the
underpayment of taxes unless it is shown that such failure is due
to reasonable cause. Ill. Rev. Stat. 1985, ch. 120, par. 10-1005
(current version at 35 ILCS 5/1005 (West 1994)). Section 1005
applies to failure to pay estimated taxes. See Ill. Rev. Stat.
1985, ch. 120, par. 8-804 (current version at 35 ILCS 5/804 (West
1994)). The existence of reasonable cause justifying abatement of
a penalty is a factual determination that can be decided only on a
case by case basis. Rohrabaugh v. United States, 611 F.2d 211, 215
(7th Cir. 1979). Reasonable cause generally has been interpreted
to mean the exercise of ordinary business care. See Du Mont
Ventilation Co. v. Department of Revenue, 99 Ill. App. 3d 263, 266,
425 N.E.2d 606 (1981).
 Kroger insists that the penalty provision does not literally
apply because it paid taxes in excess of the total asserted by the
Department and the provision applies only if a tax "is not paid on
or before the date required for filing." Despite Kroger's
contention, a separate penalty provision applies to the failure to
pay estimated taxes and not estimated payments. See Ill. Rev.
Stat. 1985, ch. 120, par. 8-804 (current version at 35 ILCS 5/804
(West 1994)).
 Kroger maintains that it established reasonable cause because
other state appellate courts recognized that gains of the type
realized by Kroger were nonbusiness income. As the Department
points out, however, National Realty was decided in June of 1986;
Kroger should not have ignored case law in this jurisdiction. 
Kroger is liable for penalties under section 1005 of the IITA. 
Ill. Rev. Stat. 1985, ch. 120, par. 10-1005 (current version at 35
ILCS 5/1005 (West 1994)).
 For the foregoing reasons, the order of the circuit court must
be reversed.
 Reversed. 
 DiVITO and BURKE, JJ., concur.