**COMPUTER WORKS, INC.,**
**Plaintiff–Appellant,**

v.

**CNA INSURANCE COMPANIES,**
**Defendant–Appellee.**

No. 86CA0807.

Colorado Court of Appeals,
Div. I.

May 12, 1988.

Davis & Ceriani, P.C., Bruce E. Rohde, Denver, for plaintiff-appellant.

Cooper & Kelley, P.C., Kim B. Childs, Denver, for defendant-appellee.

CRISWELL, Judge.

Plaintiff, Computer Works, Inc. (insured), appeals from the judgment of the district court declaring that a loss sustained by it was not covered by an insurance policy issued by defendant, CNA Insurance Companies (CNA), and dismissing its complaint. We affirm.

Insured sells computers and computer software. It purchased a "business account" insurance policy from CNA that insured against any "accidental direct physical loss" of property or income, resulting from "all hazards," with certain specific exclusions. One such exclusion was a loss resulting from any "fraudulent scheme, trick, device or false pretense" that caused insured to part with the title to or possession of any property. Such exclusion, however, did not apply to the insured's "acceptance in good faith of any *post office or express money order* or counterfeit United States or Canadian paper money." (emphasis supplied)

In 1985, insured sold computer equipment and in payment was given a bank cashier's check that later proved to be counterfeit. A claim was made against CNA under the policy, and, when that claim was rejected, insured commenced this litigation, seeking to collect the amount of the bogus cashier's check.

The trial court concluded that the language of the policy exclusion was clear, unambiguous, and logical. Thus, it held that, since a cashier's check issued by a bank is not a money order issued by the post office or by an express company, the insured's loss was excluded by the policy's express terms. We agree.

█ A "cashier's check" is simply a check drawn on the issuing bank. Its issuance creates a primary obligation on behalf of the bank to the payee named in the check, or to a subsequent holder in due course. *See* 6 J. Reitman, *Banking Law* § 112.02 (1987); *Neve Welch Enterprises, Inc. v. United Bank,* 628 P.2d 1295 (Utah 1981).

█ A "money order" issued by the post office, on the other hand, is not even a negotiable instrument; at least there can be no holder in due course of such a document. *See United States v. First National City Bank,* 457 F.Supp. 201 (S.D.N.Y.1978); 6 J. Reitman, *supra,* at 112–11.

Finally, a money order issued by an express company may take a form akin to a check or similar to a promissory note, depending on its precise contents. For example, those issued by the American Express Company are said to be the equivalents of promissory notes. *See* 6 J. Reitman, *supra,* at 112–11.

█ In the case of each instrument, however, the ultimate liability for payment rests with the issuing institution. And, given this fact, an insurer might, for any number of legitimate reasons, be willing to insure against a loss resulting from the counterfeiting or forgery of a post office or express money order, while being unwilling to insure against a loss resulting from the counterfeiting or forgery of a check issued by any of the numerous banks operating in this country. The difference in the number of institutions whose instruments would be implicated, as well as the differing internal

business practices of each, might well influence the degree of risk that an insurer would be assuming.

We find no ambiguity in the term "post office or express money order." Since a cashier's check issued by a private banking institution does not fall into either classification, there exists no basis for concluding that the contract of insurance covers the loss sustained. *See Marez v. Dairyland Insurance Co.*, 638 P.2d 286 (Colo.1981); *Travelers Insurance Co. v. Jeffries–Eaves, Inc.*, 166 Colo. 220, 442 P.2d 822 (1968).

The judgment is affirmed.

PIERCE and METZGER, JJ., concur.