AMERICAN EYE WAY, INC., a Florida corporation, Plaintiff,

v.

ROADWAY PACKAGE SYSTEM, INC., a Delaware corporation, Defendant.

No. 94–2255–CIV–HIGHSMITH.

United States District Court, S.D. Florida.

Oct. 16, 1995.

Arthur R. Rosenberg, Stein, Rosenberg & Winikoff, P.A., Fort Lauderdale, Fla., for American Eye Way, Inc. plaintiff.

Lawrence J. Roberts, Hinshaw & Culbertson, Miami, Fla., for Roadway Package System, Inc. defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

HIGHSMITH, District Judge.

THIS CAUSE came before the Court for non-jury trial on August 8, 1995. Having received documentary and testimonial evidence, having heard arguments of counsel, and being otherwise fully advised in the premises, the Court makes its findings of fact and publishes its conclusions of law.

### PROCEDURAL BACKGROUND

Plaintiff American Eye Way, Inc. ("American") brought this action against Defendant Roadway Package System, Inc.'s ("RPS") to recover damages arising from the delivery of five C.O.D. packages by RPS to one of American's customers. As a result of pretrial

rulings, the sole remaining count in American's complaint is a claim for breach of the shipping contract by RPS.

## FINDINGS OF FACT

1. On April 1, 1992, American entered into a service agreement with RPS for the transportation of packages. The service agreement incorporates the governing rules and provisions set forth in RPS's Tariffs ICC RPSI 200 and 300.

2. On March 21, 1994, American shipped five C.O.D. packages to H & S Sales in Brooklyn, New York, using RPS as carrier.

3. Each of the five shipping labels bore the following instructions: "Cash only; no alternatives."

4. The C.O.D. amounts for the five packages were: $3,500, $3,000, $4,800, $1,010, and $5,800, respectively, for a total of $18,110.

5. American declared the following values for the five packages: $4,900, $3,600, $5,900, $3,100, and $1,100, respectively, for a total of $18,600. These valuations are reflected in RPS's shipping log, known as the Pickup Record.

6. RPS delivered the five packages to the consignee, H & S Sales. Upon delivery, RPS accepted as payment an instrument bearing the facial characteristics of a certified check.

7. The check is dated "3/23/1994," and shows a serial number of "0100." It is payable to the order of American Eye Way Inc., in the amount of $18,110.00. An illegible signature appears above the signature line.

8. The check is drawn on The Dime Savings Bank of New York, FSB. There is no information indicating the name of the account holder. Moreover, two holes are punched through a portion of the account number that is normally printed along the bottom of checks, thereby obliterating one or more of the account number digits. The parties have stipulated that these holes were present at the time RPS accepted the check as C.O.D. payment.

9. The check bears the following stamped legend:

CERTIFIED

DIME SAVINGS

PAYABLE THROUGH NEW YORK CLEARING

HOUSE WHEN PROPERLY ENDORSED AND

IF UNALTERED SINCE ISSUANCE.

---

AUTHORIZED SIGNATURE

DO NOT DESTROY THIS CHECK

An illegible signature appears just above the signature line.

10. After accepting the check as C.O.D. payment, RPS forwarded it to American. This was not RPS's usual procedure for remitting C.O.D. funds to American. Rather, RPS customarily issued its own check for the C.O.D. funds it had collected.

11. American's principal, Dany Bar, presented the check to RPS's local representative, who, in turn, forwarded it to RPS's central facilities. The check came back to American, with an indication that no RPS check would be issued for these C.O.D. funds.

12. At that point, American submitted the check to Capital Bank for deposit. The bank returned the check unpaid, with the marking "Acct Not Found" on its face. The bank's memorandum accompanying the returned check states, "Maker: Illegible."

## CONCLUSIONS OF LAW

The parties agree that, pursuant to the service agreement between American and RPS, Interstate Commerce Commission Tariff RPSI 200–F, Item 460 governs this claim. This provision of the tariff states:

### COD SERVICE

1. To request COD service, shipper must prepare and attach to each COD package a COD label showing the amount to be collected. Shipper must also enter the amount to be collected on carrier's Pickup Record in the space provided for the purpose. The entry of a COD amount on carrier's Pickup Rec-

ord is not a declaration of value for the package. If the shipper does not also declare the value of the package, carrier's liability for loss of or damage to the package shall be limited to the loss or damage actually sustained by the shipper or $100.00, whichever is lower.

2. Carrier will collect for each COD package the amount shown on the COD label attached to the package. If collection cannot be made, carrier will return the COD package to the shipper.

3. Unless the shipper writes instructions to collect "Cash Only" on the COD label, carrier will accept the consignee's check naming the shipper as payee in payment for the COD package. When instructions to collect "Cash only" are written on the COD label, carrier reserves the right to accept cash, cashier's check, certified check, money order or other similar instrument issued by or on behalf of the consignee. All checks (including cashier's checks and certified checks) and money orders tendered in payment of COD packages will be accepted by the carrier at shipper's risk including, but not limited to, the risk of nonpayment and forgery, and carrier shall not be liable upon any such instrument.

Rates and Rules Tariff ICC RPSI 200–F, Item 460.

American complied with all of the foregoing requirements for the shipping of C.O.D. packages, specifying "Cash only; no alternatives," on each C.O.D. label. In accordance with the tariff, American's instructions to accept "cash only," restricted RPS to accepting only the following forms of payment: cash, cashier's check, certified check, money order or other similar instrument issued by or on behalf of the consignee. The additional words "no alternatives" included by American in its instructions, however, had no legal effect under the tariff. As more fully discussed below, the Court finds that RPS complied with the tariff in that it accepted a certified check.

*1. The instrument accepted by RPS is a check:*

■ A writing is a negotiable instrument within the meaning of Article 3–104(1) of the Uniform Commercial Code if it satisfies all of the following requirements:

(1) it must be signed by the maker or drawer;

(2) it must contain an unconditional promise or order to pay a sum certain in money, but no other promise, order, obligation or power must be given by the maker or drawer except as authorized by this Article;

(3) it must be payable on demand or at a definite time; and

(4) it must be payable to order or to bearer.

J. White and R. Summers, *Uniform Commercial Code*, § 13–1 (3d ed. 1988). The Court finds that the check accepted by RPS meets all of the foregoing criteria. It contains an unconditional promise to pay $18,110.00 to the order of American Eye Way, Inc.; it is payable to order; it is payable on demand; and it does not contain any other promise, order, obligation or power given by the maker. With regard to the requirement that the instrument be signed, the UCC "defines the term 'signed' as including any symbol executed or adopted by a party with present intention to authenticate a writing." H.J. Bailey and R.B. Hagedorn, *Brady on Bank Checks: The Law of Bank Checks* ¶ 3.1 (7th ed. 1992). The Court has found that a signature, albeit an illegible one, appears on the signature line of the instrument. Although the illegibility of the signature may raise questions regarding its genuineness, the Court need not address this issue, since the tariff places the risk of forgery upon the shipper. Thus, the instrument accepted by RPS satisfies all of the requirements for a negotiable instrument, including the signature requirement.

*2. The instrument accepted by RPS is a certified check:*

■ "Under the 1990 UCC, a certified check is a check accepted by the bank on which it is drawn. Acceptance may be made by the drawee's signed agreement to pay the

check as presented, or by a writing on the check that indicates that the check is certified." H.J. Bailey and R.B. Hagedorn, *Brady on Bank Checks: The Law of Bank Checks* ¶ 1.19 (7th ed. 1992). Similarly, according to Federal Reserve regulations, a certified check is

> a check with respect to which the drawee bank certifies by signature on the check by an officer or other authorized employee of the bank that—
>
> (1)(i) The signature of the drawer on the check is genuine; and
>
> (ii) the bank has set aside funds that—
>
> (A) are equal to the amount of the check, and
>
> (B) will be used to pay the check; or
>
> (2) The bank will pay the check upon presentment.

*Id.* Based on the foregoing requirements, a certified check must bear the bank's certification, and the certification must be signed by an authorized officer of the certifying bank.

To comply with these requirements, "the usual practice is to stamp on the face of the check the word 'certified' together with the name of the bank and the manual or facsimile signature of the authorized officer." H.J. Bailey and R.B. Hagedorn, *Brady on Bank Checks: The Law of Bank Checks* ¶ 10.3 (7th ed. 1992). Because the funds for a certified check are charged against a customer's account at the time of issuance, the account number on the certified check may be obliterated in some manner or a hole may be punched in the check to prevent double charging at the time the check is processed. *Id.* at ¶ 10.1.

■ The check accepted by RPS satisfies the definition of a certified check and the markings on it comport with the usual practice for indicating such certification. The check is stamped with the words "Certified" and "Dime Savings," the name of the bank on which it is drawn. A signature, albeit an illegible one, appears above the words "Authorized Signature." Moreover, the obliteration of a portion of the account number is in keeping with the procedure for preventing

double charging of the customer's account. Thus, the Court concludes that the check accepted by RPS is a certified check.

The Court notes that in its post-trial submission, American argues that RPS failed to exercise reasonable care when it accepted the certified check because it failed to inquire into the legitimacy of the tendered check. The tariff, however, places the risk of nonpayment and forgery entirely upon the shipper, and explicitly exonerates the carrier from liability upon any such instrument. Therefore, RPS's duty was limited to accepting one of the enumerated forms of payment. RPS fulfilled that duty by accepting a facially valid certified check. Thus, any further action upon the certified check should be directed at the maker and the certifying bank.

### CONCLUSION

Based on the foregoing considerations, the Court concludes that RPS did not breach the shipping contract with American. Therefore, pursuant to *Fed.R.Civ.P.* 58, the Court shall enter its final judgment in favor of RPS by separate order.

DONE AND ORDERED.