**CENTER VIDEO INDUSTRIAL COMPANY, INCORPORATED, an Illinois corporation, Plaintiff–Appellee,**

v.

**ROADWAY PACKAGE SYSTEM, INCORPORATED, a Delaware corporation, Defendant–Appellant.**

No. 95–2345.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 5, 1996.

Decided July 12, 1996.

Harvey M. Silets, Dawn M. Canty (argued), Katten, Muchin & Zavis, Chicago, IL, for Plaintiff–Appellee.

Joel H. Steiner, Paul A. Gajewski (argued), Axelrod, Goodman, Steiner & Bazelon, Chicago, IL, for Defendant–Appellant.

Before BAUER, RIPPLE, and MANION, Circuit Judges.

MANION, Circuit Judge.

Center Video Industrial, Inc. ("Center Video") contracted with Roadway Package Systems, Inc. ("Roadway") to ship products to mail order customers. Roadway's filed tariff required that a shipper's instruction to collect "cash only" for COD shipments meant that Roadway could accept cash or cash equivalent instruments. When Roadway accepted as payment an instrument that was marked "certified funds" but that turned out to be worthless, Center Video sued for breach of contract. The district court concluded that the instrument was not authorized by the tariff and granted summary judgment for Center Video. We affirm.

**I.**

Center Video sells video equipment to customers by mail order, shipping the equipment via common carrier. Roadway is a common carrier that Center Video frequently used to ship its product. As required by the Interstate Commerce Act, 49 U.S.C. § 10762(a)(1), Roadway filed a tariff setting forth the rates, rules and regulations governing its shipment of goods. Pursuant to 49 C.F.R. § 1052.2,[1] which requires that cash on delivery ("COD") terms be set forth in a carrier's tariff, item 460 of Roadway's tariff provides:

---

1. Title 49 C.F.R. § 1052.2 requires that "no common carrier ... shall render any COD service unless such carrier has published, posted and filed tariffs which contain the rates, charges and rules governing such service...."

Unless the shipper writes instructions to collect "Cash Only" on the COD label, carrier will accept the consignee's check naming the shipper as payee in payment for the COD package. When instructions to collect "Cash Only" are written on the COD label, carrier reserves the right to accept cash, cashier's check, certified check, money order or other similar instrument issued by or on behalf of the consignee. All checks (including cashier's checks and certified checks) and money orders tendered in payment of COD packages will be accepted by the carrier at shipper's risk including, but not limited to, the risk of nonpayment and forgery, and carrier shall not be liable upon any such instrument.

Center Video contracted with Roadway to ship COD, "cash only," equipment valued at $13,530 to an address identified as the United States Peace Corps in Denver, Colorado.[2] Roadway released the goods to the recipient "Peace Corps," accepting as payment an instrument that resembled a check from the "United States Peace Corps" but which also had "certified funds" printed above a scribbled signature. Center Video was unable to collect on the instrument and demanded that Roadway pay $13,530 for the goods based on its failure to comply with the tariff.[3] Roadway refused and Center Video sued for breach of contract.

The district court granted Center Video summary judgment, finding that Roadway had violated its tariff and thus its contract, and awarded Center Video damages of $13,530.[4] Roadway appeals. We affirm.

## II.

■ The district court concluded that Roadway had violated its tariff by accepting a nonnegotiable instrument as payment from the "Peace Corps." Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *GCIU Employer Retirement Fund v. Chicago Tribune Co.,* 66 F.3d 862, 864 (7th Cir.1995). We review summary judgment de novo. *Id.*

■ The undisputed facts demonstrate that Roadway failed to comply with the terms of its tariff. The tariff required that "when instructions to collect 'Cash Only' are written on the COD label," Roadway may accept only "cash, cashier's check, certified check, money order or other similar instrument issued by or on behalf of the consignee." Roadway admits the document it accepted was neither cash, cashier's check, certified check, nor a money order. It contends instead that the document was a "similar instrument," or at least that its driver reasonably believed it was.[5]

■ Taken out of context, the term "similar instrument" could mean many things. However, the term does not exist in isolation. It immediately follows four specific terms: cash, cashier's check, certified check, and money order. "[W]here a general term follows a series of specific terms, the former should not be given its broadest possible meaning, but rather extends only to matters of the same general class or nature as the terms specifically enumerated." (rule of *ejusdem generis*). *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.,* 976 F.2d 1037, 1041 (7th Cir.1992). Applying this rule of construction to Roadway's tariff requires that we examine the specifically enumerated terms contained within the tariff (e.g., cash,

2. The record is incomplete concerning who actually ordered the goods, or to whom they were delivered. Suffice it to say the "Peace Corps" recipient was not the federal agency, the United States Peace Corps.

3. Center Video offered alternative theories for Roadway's liability for the note which, because of our decision on the tariff, we do not consider.

4. The district court refused to award Center Video attorneys' fees. Center Video filed a cross-appeal which has been voluntarily dismissed.

5. "Similar instrument" cannot mean "forgery" or "counterfeit." The tariff places these risks entirely on the shipper already. Both forgeries and counterfeits are fake or unauthorized copies of genuine instruments. *See, e.g., Reliance Ins. Co. v. Capital Bancshares, Inc.,* 912 F.2d 756, 757 (5th Cir.1990) (counterfeit presupposes genuine instrument). Roadway does not contend that the document they accepted is a forgery of a genuine money order, certified check, or cashier's check; rather it argues that the document is a spurious "similar instrument."

cashier's checks, etc.) to determine their common characteristics.

■ Roadway essentially argues that the "Peace Corps" instrument shares visual characteristics with the acceptable instruments enumerated in its tariff. Roadway contends the common characteristics contained within the "Peace Corps" instrument include

> the boldly printed legends "UNITED STATES PEACE CORPS" and "CERTIFIED FUNDS" stamped on the front. The draft identifies itself as being "Made Payable" to Center Video. It also contains bank code at the bottom and a signature. The back of the check contains instructions to financial institutions on payment. Nothing on the face of the check indicates that it is not a valid authorized draft from an agency of the Federal Government. Nothing about the transaction put Roadway's driver on notice as to the validity of the draft.

But such a "looks something like it" test provides little insight into the tariff. Roadway cannot seriously contend that its clients entrust to Roadway their merchandise and permit Roadway to collect as payment anything that looks like cash, a cashier's check, a certified check, or a money order.[6] A carrier cannot define instruments in commerce by what its drivers believe a document looks like. The documents listed in Roadway's tariff have legal definitions and operations in banking and law. We must look to the legal import of the enumerated instruments in order to determine what distinguishes a "similar" from a dissimilar instrument. A review of their characteristics reveals certain essential similarities that convince us that the instrument Roadway accepted cannot be considered a "similar instrument" under its tariff.

### Cash

Title 12 U.S.C. § 4001(4) defines "cash" as "United States coins and currency, including Federal Reserve Notes." This is no surprise, nor is it terribly useful. Roadway did not mistake the disputed instrument for cash.

The pertinent question presented by Roadway's tariff is what similar instruments are acceptable substitutes for cash.

### Cashier's Check

Title 12 U.S.C. § 4001(5) defines "cashier's check" as "any check which—(A) is drawn on a depository institution; (B) is signed by an officer or employee of such depository institution; and (C) is a direct obligation of such depository institution." Black's Law Dictionary defines "cashier's check" as "a check drawn by the bank upon itself and issued by an authorized officer of a bank, directed to another person evidencing [the] fact that [the] payee is authorized to demand and receive from the bank, upon presentation, the amount of money represented by the check." Black's Law Dictionary 217 (6th ed.1990). A cashier's check has been defined as "a bill of exchange drawn by a bank upon itself and accepted in advance by the act of its issuance and not subject to countermand by either its purchaser or the issuing bank." *Able & Associates, Inc. v. Orchard Hill Farms of Illinois, Inc.,* 77 Ill.App.3d 375, 32 Ill.Dec. 757, 760, 395 N.E.2d 1138, 1141 (1979) (quoting *Wertz v. Richardson Heights Bank & Trust,* 495 S.W.2d 572, 574 (Tex. 1973)); *Munson v. American Nat'l Bank & Trust Co. of Chicago,* 484 F.2d 620, 623–24 (7th Cir.1973). It is issued by the drawee (the bank) after the remitter (the customer) has provided to the bank payment in the amount of the cashier's check. *See, generally,* Henry J. Bailey & Richard B. Hagedorn, Brady on Bank Checks, para. 1.17 (7th Ed.1992). By drawing the check upon itself, the bank guarantees it will honor the check when presented. "The cashier's check is substantially equivalent to a certified check in that neither generally can be countermanded and both circulate in the commercial world as primary obligations of the issuing bank as substitutes for the money represented." *Gillespie v. Riley Management Corp.,* 59 Ill.2d 211, 319 N.E.2d 753, 756 (1974). By issuing a cashier's check a bank "creates a primary obligation on behalf of the bank to the payee named on the check." *Computer*

---

**6.** Even applying the "looks something like it" test, the document contained none of the formalities of a cashier's check, certified check or money order: it lacked a bank or other issuing institution name, a bank address, a routing number, and an account number.

*Works, Inc. v. CNA Ins. Cos.*, 757 P.2d 167, 168 (Colo.Ct.App.1988). In short, the cashier's check is a direct obligation of the bank itself for the face amount payable to the designated payee.

*Certified Check*

Title 12 U.S.C. § 4001(6) defines "certified check" as "any check with respect to which a depository institution certifies that—(A) the signature on the check is genuine; and (B) such depository institution has set aside funds which (i) are equal to the amount of the check; and (ii) will be used only to pay such check." "Certification of a check is acceptance." *Skipper Marine Elec., Inc. v. United Parcel Service, Inc.*, 210 Ill.App.3d 231, 155 Ill.Dec. 55, 60, 569 N.E.2d 55, 60 (1991) (citing Illinois Uniform Commercial Code, Ill.Rev.Stat. ch. 26, par. 3–411 (1987), revised effective January 1, 1992 to now state, similarly, " 'certified check' means a check accepted by the bank on which it is drawn." 810 ILCS 5/3–409(d)). "The term 'certified check' has a definite and accepted commercial meaning with specific characteristics unique to such an instrument and to no other." *Skipper Marine*, 155 Ill.Dec. at 59, 569 N.E.2d at 59 (setting out the text of 12 U.S.C. § 4001(6), above). Under the UCC, "a certified check is a check accepted by the bank on which it is drawn." *American Eye Way, Inc. v. Roadway Package System, Inc.*, 904 F.Supp. 1376, 1378 (S.D.Fla.1995). "[T]he funds for a certified check are charged against a customer's account at the time of issuance." *Id.* at 1379. Thus, a certified check becomes the primary obligation of the bank that has certified it. The certifying bank warrants that sufficient funds are on deposit and those funds have been set aside to pay the check.

*Money Order*

▮▮▮ Black's Law Dictionary defines a money order as "a type of negotiable draft issued by banks, post offices, telegraph companies and express companies and used by the purchaser as a substitute for a check. Form of credit instrument calling for pay-

ment of money to named payee and involving three parties: remitter, payee, and drawee.... [E]ssential characteristic is that it is purchased for purpose of paying a debt or to transmit funds upon the credit of the issuer of the money order." Black's Law Dictionary 1006 (6th ed.1990). Money orders differ from cashier's checks and certified checks in that the latter contain the signature of a bank official, while money orders do not. Because the UCC provides that no one is liable for an instrument unless his signature appears on it, some states have held that money orders are not primary obligations of the bank. *See, e.g., Chicago Cicero Currency Exchange Inc. v. Continental Illinois Nat'l Bank & Trust Co. of Chicago*, 189 Ill.App.3d 259, 136 Ill.Dec. 726, 727–28, 545 N.E.2d 250, 251–52 (1989) (since not signed by an authorized representative of issuing bank, a personal money order is more in the nature of an ordinary check); *compare, Interfirst Bank Carrollton v. Northpark Nat'l Bank of Dallas*, 671 S.W.2d 100, 103 (Tex.Ct.App. 1984) ("We are of the opinion that the personal money order is analogous to a bank money order; that it should be treated as a cashier's check."). Colorado, where the document in the case before us was issued,[7] specifies that while money orders differ from cashier's checks in that the former are not negotiable instruments, "in the case of each instrument, however, the ultimate liability for payment rests with the issuing institution." *Computer Works, Inc. v. CNA Ins. Cos.*, 757 P.2d at 168. Because the remitter has already paid the money to the drawee (the bank, the post office, or other issuer) when purchasing a money order, absent a stop order, the payee may collect the funds immediately and directly from the drawee with no further contact with the remitter. *See, generally,* Henry J. Bailey & Richard B. Hagedorn, *supra*, para. 1.21.

▮▮▮ As emphasized above, this is a "cash only" transaction. Thus according to the tariff, the Roadway driver may only accept cash, a cashier's check, a certified check,

---

7. Money orders are instruments created pursuant to state law and the law of the state in which the money order was purchased generally governs. *See* Henry J. Bailey & Richard B. Hage-

dorn, *supra*, para. 1.21. Of course, in this case we are not analyzing a money order as such but rather the similarities between money orders, cashier's checks, and certified checks.

a money order, or a similar instrument. But he cannot accept an ordinary check. Before examining the Peace Corps instrument, however, we should note that even an ordinary check is a "demand instrument" which is payable "at sight, or on presentation." *See* UCC § 3–108. The UCC provides that a check is a draft drawn on a bank and payable on demand. UCC § 3–104(2)(b). Cashier's checks and certified checks are both checks; and money orders are check equivalents. *Chicago Cicero Currency Exchange v. Continental Illinois Nat'l Bank & Trust Co. of Chicago,* 136 Ill.Dec. at 727–28, 545 N.E.2d at 251–52; *Interfirst Bank Carrollton v. Northpark Nat'l Bank of Dallas,* 671 S.W.2d at 103; *Computer Works, Inc. v. CNA Ins. Cos.,* 757 P.2d at 168. Because the enumerated instruments are checks or the equivalent of checks, like ordinary checks they are all demand instruments payable at sight or on presentation.

What distinguishes the instruments enumerated in Roadway's tariff from ordinary personal or business checks (which again are explicitly precluded by the "cash only" tariff provision) is that in addition to constituting demand instruments, each is an institutionally guaranteed instrument where money has already been paid or set aside, securing the instrument. A cashier's check and a money order are issued only after the bank or issuing institution has received payment, and a check is certified by a bank only after the bank has placed a hold on funds to cover the check. In the case of each such guaranteed instrument, "the ultimate liability for payment rests with the issuing institution." *Computer Works, Inc.,* 757 P.2d at 168. Therefore, a "similar instrument" must be one that is cash equivalent, meaning that it has actual value to the payee and is not contingent on the payor having sufficient funds when presented to the drawee bank. An ordinary check, on the other hand, is "payable on demand" only if the account drawn upon has sufficient funds to cover the amount of the check at the time of demand. If funds are not sufficient, the institution can reject the demand.

*The "Peace Corps" Instrument*

■ The "Peace Corps" instrument that the Roadway driver accepted does not even reach the level of a demand instrument—an ordinary check—much less the level of an institutionally guaranteed instrument that is equivalent to cash. Thus it certainly does not qualify as a "similar instrument" when compared to those specified as acceptable forms of payment. While the front of the instrument "looks something like" an ordinary check with the bold printing of "certified funds" above a "signature" (that could have been scribbled by a three-year-old), the instrument is not even a demand instrument drawn on a bank. Although "United States Peace Corps" is printed on the upper left portion, which could cause a recipient to think a government agency stands behind the obligation, the instrument is drawn neither on a bank nor the U.S. Treasury and contains neither a routing nor account number. The reverse side of the instrument is even more revealing. On the back, the instrument identifies itself as a "purchase order," and provides the following instructions:

ATTENTION FINANCIAL INSTITUTION

This certified purchase order must be endorsed by the payee. Photocopy both sides for your records. Send original proof of your federal identification number and routing code. Accounts Payable. United States Peace Corps Box 304; Denver, CO 80237–0304. Allow 45 days for transfer and expect prime rate interest addition.

This statement identifies the document as an account payable by the "United States Peace Corps," not an instrument payable on demand or when presented to a financial institution. Instead, the document provides that funds will not be transferred for 45 days. It is in the nature of a bill or an invoice—not a demand instrument. It also demonstrates that, unlike cashier's checks, money orders, or certified checks, no money was paid or set aside to cover the instrument's order to pay Center Video. The provision to "expect prime rate interest" further demonstrates that the document was not similar to the other methods of approved payment because

checks, money orders and similar instruments do not provide interest.

The face of the instrument was sufficiently deceiving to possibly cause an unwary person to think he was receiving a promise for payment that was certified by a government agency. However, even if this instrument had been genuine, it would not have met the legal requirements necessary to constitute a similar instrument. In this case the document was not genuine. But drivers who collect payments upon delivery of goods are trained to be wary of instruments that are not acceptable cash equivalents, genuine or not. Roadway's driver made a mistake, and Roadway must pay. Accordingly, we hold that because the "Peace Corps" document accepted by Roadway was not a "similar instrument" as defined by Roadway's tariff, the district court correctly entered summary judgment for Center Video.

AFFIRMED.